ALBERT SCHIPPA

*v.*

WEST VIRGINIA LIQUOR CONTROL COMMISSION

(No. 10049)

Submitted September 28, 1948.   Decided

November 16, 1948.

RILEY and KENNA, JUDGES, dissenting.

*Patrick J. McGuire,* and *Robert G. Kelly,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *W. C. Marland,* Assistant Attorney General, for defendant in error.

Fox, Judge:

Albert Schippa, plaintiff in error, instituted his action against the West Virginia Liquor Control Commission, a corporation, by way of notice of motion, in the Circuit Court of Kanawha County, on the 11th day of June, 1946, seeking the recovery of the sum of $576.00 with interest from January 11, 1943, based on a transaction by which he allegedly purchased from an employee of the defendant twenty-five cases of whiskey, for which he paid the sum of $800.00, but of which liquor so purchased only seven cases were delivered, leaving a balance of $576.00 for which the plaintiff obtained nothing. This statement of the claim is based upon a bill of particulars, to which an affidavit was attached, filed with the notice of motion.

On the 19th day of June, 1946, the defendant appeared and filed its counter affidavit, denying that anything was due the plaintiff. On the 29th of June, the defendant filed its demurrer and special plea, which demurrer was afterwards amended on the 8th day of September, 1947. Both demurrers rely upon Section 35, Article VI of the Constitution of West Virginia, and the amended demurrer also relies upon the provisions of Chapters 4 and 5 of the Acts of the Legislature, 1935, now appearing in Michie's Code, 1943, as Chapter 60. The special plea so filed pleads the two statutes aforesaid, and asks that they be read in connection with Article VI, Section 35 of the Constitution, the effect of which plea was to deny that there was any liability on the defendant, by reason of the fact that neither said Commission nor its agents had any legal right or authority to do the act complained of in the notice of motion, that is, to make the sale of liquor out of which this controversy arises, and that the plaintiff, participating therein, could not recover thereon.

The case was heard upon the said demurrers and special plea, and on December 2, 1947, the said demurrers were

sustained, and the defendant not desiring to amend his notice of motion, the same was dismissed.

The bottom question in this case is whether the West Virginia Liquor Control Commission should be treated as an arm and agency of the State, and as such immune from suit under the provisions of Section 35 of Article VI of our Constitution; or whether it should be treated as engaged in a business separate and distinct from the exercise of governmental power, usually termed proprietary, and subject to suit to the same extent as if it were a private corporation. Chapter 4 of the Acts of the Legislature, 1935, creating said commission provides that it might sue and be sued, but this provision is not important, because if it is an arm and agency of the State, a suit against it is equivalent to a suit against the State, and the provision of the Constitution aforesaid that: "The State of West Virginia shall never be made defendant in any court of law or equity. * * *" is clearly applicable, and the Legislature exceeded its Constitutional power when it authorized suits against said commission.

Since our Constitution was adopted there have been many boards and commissions brought into being by the Legislature, and many of them termed corporations, with the provision that they might sue and be sued. Generally speaking, these corporations have been treated as agencies of the State, and suits against them not permitted. In *Supply Co. v. Board of Control,* 72 W. Va. 524, 78 S. E. 672, it was held: "The State Board of Control is a direct governmental agency of the state; an action on a contract made by that board in the line of its state agency is in reality and substance a suit against the state itself and can not be maintained." Reference was made in that case to the case of *Miller v. State Board of Agriculture,* 46 W. Va. 192, 32 S. E. 1007, in which The Board of Agriculture was held to be a state agency though not incorporated. Reference was also made therein to *Railway Co. v. Conley,* 67 W. Va. 129, 67 S. E. 613, in which it was held that suit against a state officer could not be construed as a suit

against the State; but in *Miller v. State Board of Agriculture, supra,* it was held that the State could not be sued by mandamus or other judicial proceedings: "As the state cannot be sued, *mandamus* or other judicial process will not lie against state officers or boards to compel them to execute an executory contract between an individual and the state. Though the state is not in name a party, such suit is against it, within the meaning of the provision of the Constitution prohibiting suit against the state." To the same effect is *State ex rel. Gordon v. State Board of Control,* 85 W. Va. 739, 102 S. E. 688. In *State v. Chilton,* 49 W. Va. 453, 39 S E. 612, it was held that the acts of a private agent might bind his principal if acting within the apparent scope of his authority, but that such was not the case as to a public officer, as the State was bound only by authority actually vested in the officer, and his powers are limited and defined by its laws, and that a State is not bound by the unauthorized acts of public officers, and their misconduct is no estoppel against the State.

A number of cases hold that the State Road Commission is an agency of the State and can not be sued. Among these are *Mahone v. State Road Commission,* 99 W. Va. 397, 129 S. E. 320; *Stewart v. State Road Commission,* 117 W. Va. 352, 185 S. E. 567; *Watts v. State Road Commission,* 117 W. Va. 398, 185 S. E. 570; *Hardy v. Simpson, State Road Commissioner,* 118 W. Va. 440, 191 S. E. 47. A municipality, a creature of the State may not, in the absence of express statutory authority, be sued for acts performed in a purely governmental capacity. *Hayes v. Town of Cedar Grove,* 126 W. Va. 828, 30 S. E. 2d 726. But against a corporation, created by the State, which acts in a proprietary capacity, and in which the State exercises no governmental powers, and in cases where, under our statute, a municipality or other public body is required to maintain roads and streets in a reasonably safe condition, and is by statute made liable in damages for failure to do so, suits or actions may be maintained. *Tompkins v. The Kanawha Board,* 19 W. Va. 257. Suits may also be maintained against State officials in respect to the performance

of their duties, in connection with matters as to which the State has no direct governmental interest to preserve, and such suits are held not to be suits against the State. *Railway Co. v. Conley, supra.* See also *Poindexter v. Greenhow,* 114 U. S. 270.

Reference to the above authorities is made to show the general trend of authority with respect to suits and actions against public corporations. Many such corporations are organized, and illustrative are corporations organized for purposes not strictly governmental, such as those organized for the operation of water and power plants, swimming pools, parks and other recreational facilities, which come under the classification of proprietary as distiguished from governmental enterprises. The question now arises whether a public corporation, organized for the purpose of engaging in the business of selling intoxicating liquors should be treated as an agency of the State, exercising governmental authority, or merely as one operating in a proprietary or non-governmental capacity.

All authorities agree that a State has particular duty to perform with respect to the regulation and sale of intoxicating liquor. In 30 Am. Jur. 260 it is stated:

> "From the earliest times it has been found expedient to control, not only the use of intoxicating liquors, but more especially the traffic therein. Such control is justified under the police power. It embraces both regulatory and prohibitory measures. It may assume various forms, such as the imposition of license taxes upon manufacturers or dealers, restrictions as to the class of persons to whom liquors may be sold, and as to the hours of the day and the days of the week during which places of sale may be open; a total prohibition of all manufacture or sale whatever, or the assumption by the state itself of power exclusively to supply liquors to its inhabitants. The form of control is a matter for the state to decide

as a question of public expediency and morality. The exercise of regulation and control of the liquor traffic has become so general that it has been said that courts may judicially notice that most free governments have made the business of selling liquor a subject of regulation."

In *Hinebaugh v. James, Tax Commissioner,* 119 W. Va. 162, 192 S. E. 177, sale of non-intoxicating beer was said to be analogous to the traffic in hard liquor, and it was there stated that: "As to the regulation whereof under the police power there can be no doubt." This theory was sustained in *Morris v. Sevy,* 129 W. Va. 331, 40 S. E. 2d 874. We do not think there can be any doubt that the State of West Virginia, and its Legislature, in exercising the police power vested in the State, has always assumed a high degree of power in connection with the regulation and sale of intoxicating liquors. During the State's history the question of prohibiting the sale of liquor at any time, or under any condition, has been more than once submitted to the people of the State, and at one time its sale was prohibited by Constitutional provisions, proposed and ratified by the people of the State. It is a matter of great interest to the State and its people, a matter as to which there is sharp disagreement among our people, and the traffic is one which, admittedly, can only be controlled, in any substantial measure, by governmental authority.

The matter of the manufacture and sale of liquor is of such importance that the same has become a part of our Constitution. Section 46 of Article 6 provides that: "The Legislature shall by appropriate legislation regulate the manufacture and sale of intoxicating liquors within the limits of this State, and any law authorizing the sale of such liquors shall forbid and penalize the consumption and the sale thereof for consumption in a saloon or other public place." Following the constitutional mandate, the Legislature of this State by Chapter 4, of the Acts of the Legislature, 1935, enacted a comprehensive Liquor Control Act, Section 1 of Article 1 of which states: "The

purpose of this chapter is to give effect to the mandate of the people expressed in the repeal of the state prohibition amendment; and to assure the greatest degree of personal freedom that is consistent with the health, safety and good morals of the people of the state. To these ends the police power of the state is pledged to the sound control and the temperate use of alcoholic liquors." While the term police power may sometimes cover activities not entirely governmental in their nature, that power is essential, to the exercise of governmental power, is an attribute of sovereignty, and a power always exercised by sovereignty, or its creatures, to which it may delegate portions thereof, the control of which, under our system, is vested in the Legislature, independent of Constitution or statutes. It is in all its essence a governmental power of the highest order. Therefore, when the Legislature based its enactment for the control of the liquor traffic upon the police power of the State, it was certainly intended to bring to the aid of such control the sovereign power of the State. In reading the Act, and its several provisions, we are strengthened in this view, because the Legislature, by Section 19 of Article III thereof, provides that after the creation of a limited operating fund, all receipts shall be paid into the State Treasury; by Section 21, it places a limit on the amount of liquor which may be sold to any one person at one time; by Section 22, it prohibits a sale to a minor; and by Section 24 it constitutes employees of the Liquor Control Commission conservators of the peace, with the authority of police officers. Other provisions provides for fines and penalties for disorders around liquor stores, and many other provisions are made therein with respect to sale of liquors, and punishment for the violation thereof. Throughout the entire act is shown the clear intent to exercise governmental powers in connection with the regulation and sale of intoxicating liquor. Evidently the Legislature was of the opinion, in which we concur, that the regulation and sale of intoxicating liquor by the State could not be effected except through the exercise of governmental authority. A provision of the Constitution which provides against the saloon, or the consumption of

liquor in any public place made it mandatory that the State take control, if liquor was to be sold; and the Constitutional provision is mandatory in requiring the Legislature to provide for the sale of liquor. We have no doubt but that the Liquor Control Commission, is an agency for the State, performing a governmental function, and is therefore immune from suit.

There is a great deal of general authority sustaining this view. In 49 Am. Jur. 317 it is stated that: "Where a state creates or organizes a corporation and operates the same for a commercial purpose, it is ordinarily held subject to suit, the same as any private corporation organized for the same purpose. Such a corporation may be subjected to suit in tort. Where, however, the corporation is performing what are essentially public or governmental purposes, it is in effect a part of the government and an action against it in effect a suit against the government, which in the absence of the state's consent to the suit cannot be maintained." In 49 Am. Jur. 301, it is said: "It is an established principle of jurisprudence in all civilized nations, resting upon grounds of public policy, that the sovereign cannot be sued in its own courts or in any other court without its consent and permission. It is inherent in the nature of a sovereignty not to be amenable to the suit of an individual without its consent, and this principle applies with full force to the several states of the Union. No suit, whether at law or in equity, is maintainable against the state either in its own courts or the courts of a sister state, by its own citizens, the citizens of another state, or the citizens or subjects of a foreign state, unless by statute it has consented to be sued or has otherwise waived its immunity from suit." Of course, that principle is embodied in our State Constitution. The 11th Amendment to the Constitution of the United States provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by a citizen of another State or citizen of any foreign state.

On the general power of a state to control the sale of intoxicating liquors see *State ex rel. Wilkinson v. Murphy,* (Ala.), 121 A. L. R. 283; *Sheppard v. Dowling,* (Ala.) 28 So. 791, 85 Am. St. Rep. 68; *Commonwealth v. Stofchek,* (Pa.) 185 A. 840; *State v. Davis,* (Ohio), 7 N. E. (2d) 652; *Frankenstein v. Leonard,* (Ohio), 16 N. E. (2d) 424; *Plumb v. Christy,* (Ga.), 30 S. E. 759; *State ex rel. George v. Aiken,* (S.C.), 20 S. E. 221; *Farmville v. Walker,* (Va.), 43 S. E. 558.

In the case of *State of South Carolina v. United States,* 199 U. S. 261, it was held that: "The dispensing and selling agents of a state which, in the exercise of its sovereign power, has taken charge of the business of selling intoxicating liquors, are fairly within the scope of U. S. Rev. Stat., § § 3232, 3244, 3140, * * *, under which an excise tax is to be collected from all sellers of intoxicating liquors".; and "The United States may, under the Federal Constitution, exact the license taxes prescribed by the internal revenue laws for dealers in intoxicating liquors from the dispensing and selling agents of a state which, in the exercise of its sovereign power, has taken charge of the business of selling such liquors." And in *State of Ohio v. Helvering,* 292 U. S. 360, it was held: "A state engaging in the business of selling spirituous liquors is not immune from the excise tax imposed by the Federal Government on those engaging in such business, since in so doing it is not performing any governmental function." It is also held in that case that: "The police power, as applied to business activities, is the power to regulate those activities, not to engage in carrying them on." These holdings are, of course, entitled to great respect, and are persuasive in support of the theory that when a state engages in the liquor business, it does so in a proprietary capacity, as distinguished from the exercise of its power as a government. However, we do not think they necessarily control the public policy of a state, so long as that policy does not interfere with any right of the Federal Government, under the Federal Constitution. West Virginia being a sovereign state, and being the repository of

the police power inherent in all governments, has the right to exercise such power in any manner it sees fit, so long as it does not interfere with the powers and prerogatives of the Federal Government, delegated to it by the States.

The old theory, so ably sustained by *McCullouch v. Maryland,* 4 Wheat. 316, that neither the State nor the Federal Government may tax the agencies of the other, has not been entirely discarded by recent decisions which permit the Federal Government to impose an income tax on the salaries of state officials; and, we think, it is still the law that neither a State nor the Federal Government may interfere with the governmental activities of the other, or dictate its public policy, unless it be in cases where the Federal Government possesses power under the Federal Constitution delegated to it by the States. We are of the opinion, therefore, that the two cases cited above do not amount to an inhibition against the State of West Virginia using its governmental powers in the regulation and sale of intoxicating liquors, in the manner provided by Chapter 4, Acts of the Legislature, 1935.

It would seem, in view of our opinion of the immunity of the State Liquor Control Commission from suit, that it is unnecessary to refer to the other points raised in the case; but we may well state that even if the said Commission was held to be subject to suit, there could be no recovery in this case on the part of the plaintiff. Clearly he participated in an illegal transaction with an employee of the Liquor Control Commission. Article 4 of Chapter 4 of the Acts of 1935, as amended by Chapter 5 of the same Acts, provides for the sale by wholesale of liquor to certain prescribed persons, such as druggists and others employed in handling alcohol in industry, in the arts and sciences, and for sacramental uses. It is made unlawful to sell liquor by wholesale to any other person. A sale of twenty-five cases of liquor by an employee of the Commission to any person not so authorized to purchase at wholesale, was clearly illegal, and under general law, and on grounds of public policy, plaintiff could not maintain his suit. But all this

aside, Secton 22 of Article 6, Chapter 4, of the Acts of the Legislature, 1935 specifically provides: "No action shall be maintained to recover the price of alcoholic liquor sold in violation of the provisions of this chapter, except that the State or the commission may recover from any person the price of any alcoholic liquor purchased by him in violation of this chapter, and from any person who may have sold alcoholic liquors in violation of the provisions of this chapter, the consideration received by him therefor." Again the State was asserting its sovereign power by providing that it alone could maintain a suit growing out of an illegal transaction, in the liquor traffic.

The judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*