THE CITY OF MORGANTOWN, *a Municipal Corporation*

*v.*

THE HONORABLES HENRY LAKIN DUCKER, W. LYLE JONES *and* A. W. PETROPLUS, *Judges* OF THE STATE COURT OF CLAIMS

(No. 12806)

Submitted April 22, 1969.        Decided June 17, 1969.

*Mike Magro, Jr., Donald E. Price,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Assistant Attorney General, for respondents.

HAYMOND, PRESIDENT:

In this mandamus proceeding instituted in this Court in February, 1969, the petitioner, The City of Morgantown, a municipal corporation, seeks a writ to require the defendants, The Honorables Henry Lakin Ducker, W. Lyle Jones and A. W. Petroplus, Judges of the State Court of Claims, to assume jurisdiction of a certain claim of the plaintiff in the amount of $40,886.22 against the Board of Governors of West Virginia University, a corporation, for fire protection fees for the fiscal year 1966-67, assessed by the plaintiff against the board, which claim the board on November 22, 1967, refused to pay.

Upon the verified petition and its exhibits this Court issued a rule returnable April 22, 1969. On that day this proceeding was submitted for decision upon the petition and its exhibits and the demurrer of the defendants to the petition, and the briefs in behalf of the respective parties, and the brief of William E. Dixon, Harry H. Meeks, John H. Junkins and Robert H. Law, joint venturers, trading as Beechhurst Avenue Joint Venture, as amici curiae, leave to file such brief having previously been granted by this Court.

On December 20, 1967, the petitioner filed its claim against the Board of Governors of West Virginia University with the Court of Claims and on April 19, 1968, the board filed an answer in which it denied liability for the claim and refused to pay it. A hearing upon the claim was held July 11, 1968 and on November 8, 1968, the Court of Claims rendered its decision by which it disallowed the claim of the petitioner on the ground that the Board of Governors of West Virginia University was not an agency of the State of West Virginia and that the Court of Claims was without jurisdiction to consider or to approve the claim.

In connection with its decision the court, in an opinion prepared by the Honorable Henry Lakin Ducker, Presiding Judge, set forth the reasons for its refusal to as-

sume jurisdiction and to consider the claim. A copy of the opinion is filed as an exhibit with the petition in this proceeding.

The facts are undisputed and the questions presented for decision are questions of law.

The controlling question to be determined in this proceeding is whether the Board of Governors of West Virginia University is a State agency within the meaning of Section 13, Article 2, Chapter 14, Code, 1931, as amended, and as such is a public and governmental body which, as an arm of the State, is immune from suit within the meaning of Article VI, Section 35 of the Constitution of West Virginia which provides that "The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

The petitioner contends that the board is a State agency and that a suit against it is a suit against the State which can not be maintained. On the contrary the defendants insist and the Court of Claims has held that the board is not a State agency within the meaning of Section 13, Article 2, Chapter 14, Code, 1931, as amended, and is not immune from suit under the provisions of Article VI, Section 35 of the Constitution of this State.

Section 13, Article 2, Chapter 14, Code, 1931, as amended, provides: "The jurisdiction of the court, except for the claims excluded by section fourteen [§14-2-14], shall extend to the following matters:

"1. Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State as a sovereign commonwealth should in equity and good conscience discharge and pay.

"2. Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, which may be asserted in the

nature of set-off or counterclaim on the part of the State or any State agency.

"3. The legal or equitable status, or both, of any claim referred to the court by the head of a State agency for an advisory determination."

The excluded claims above referred to are claims for loss, damage, or destruction of property or injury or death incurred by a member of the militia or national guard when in the service of the State; disability or death benefit under chapter twenty-three of the code; for unemployment compensation under chapter twenty-one-A of the code; for relief or public assistance under chapter nine of the code; and a claim with respect to which a proceeding may be maintained against the State, by or on behalf of the claimant in the courts of the State.

Section 1, Article 11, Chapter 18, Code, 1931, as amended, relating to West Virginia University and its board of governors, provides, to the extent here pertinent, that "The business and educational affairs of the university shall be under the control, supervision and management of the board of governors, which shall be a corporation, and as such may contract and be contracted with, sue and be sued, plead and be impleaded, and have and use a common seal."

Section 1a of the same article and chapter contains these provisions: "The control of the financial, business and all other affairs of the West Virginia University and of Potomac State school is hereby transferred from the State board of control to the board of governors. The board of governors shall, in respect to the control, management and property of such institutions, have the same rights and powers and shall perform the same duties as were heretofore exercised or performed by the State board of control. The title to all property of such institutions is hereby transferred to and vested in the board of governors."

The board of governors is a public and governmental corporation. Its members, which are nine in number, are appointed by the governor with the advice and consent of the senate for a nine year term; no more than five members shall belong to the same political party; no member may be removed from office by the governor except for official misconduct, incompetence, neglect of duty, or gross immorality, and then only in the manner prescribed by law for the removal by the governor of State elective officers; and before exercising any authority or performing any duties as a member of the board each member must qualify as such by taking and subscribing to the oath of office prescribed by Article IV, Section 5 of the Constitution. From the foregoing statutory provision it is clear that the members of the board are appointive public officers and that with respect to the business and affairs of the West Virginia University the board of governors acts for and in behalf of the State of West Virginia and in so doing exercises the sovereign power and authority of the State.

Though the title to all property of the university is vested in the board of governors the board holds such property in trust for the State and not as a separate or independent corporate entity. Previously and until 1947, the title to the property of the university was in the State board of control and the action of the Legislature by statute at different times in transferring the title to public property from one State agency to another indicates that the particular agency vested with the title at any time holds the property for the State which is the real and beneficial owner, for if the particular agency vested with the title to the property were an agency separate and independent of the State the transfer of the title could not be made by action of the Legislature but instead could be made only by a conveyance by such separate or independent entity. Moreover, the board of governors is entirely dependent on the Legislature for its financial support as the governing body of the uni-

versity and all its departments. Moneys received and administered by the board of governors are public moneys and such moneys, whether derived from admission fees to athletic contests, from tuition fees, from medical and hospital services, and from appropriations by the Legislature, are public moneys, *State ex rel. The Board of Governors of West Virginia University v. Sims,* 134 W. Va. 428, 59 S. E.2d 705, and when accepted, received or collected by the board must be paid into the State treasury and credited to the proper fund as provided by Section 2, Article 2, Chapter 12, Code, 1931, as amended, and can be withdrawn from the proper fund in the State treasury only upon a warrant issued by the auditor on the treasurer and by the check of the treasurer upon such warrant as provided by Section 1, Article 3, Chapter 12, Code, 1931, as amended.

Historically, from the time of its creation in 1909 until it was abolished in 1957, the West Virginia Board of Control which was then succeeded by the commissioner of public institutions, was vested with the supervision and control of State institutions, including the West Virginia University, until the control of the financial, business and all other affairs of the university was transferred from the board of control to the board of governors in 1947 by Chapter 89 of the Acts of the Legislature, 1947, Regular Session, and under the statute effectuating such transfer, the board was vested with the same rights and powers and was required to perform the same duties as were formerly exercised or performed by the board of control. The board of control, although a corporation, has been held by this Court to be a direct governmental agency of the State. *State ex rel. Gordon v. State Board of Control,* 85 W. Va. 739, 102 S. E. 688; *The Miller Supply Company v. State Board of Control,* 72 W. Va. 524, 78 S. E. 672. As the previously existing board of control has been held by this Court to be a direct governmental agency of the State, it is logical to conclude that the board of governors, in the performance of the same duties and

in the exercise of the same rights and powers that were performed and exercised by the board of control, is likewise a direct governmental agency of the State. Education is a proper function of State government, *State ex rel. The Board of Governors of West Virginia University* v. *Sims,* 134 W. Va. 428, 59 S. E.2d 705, and the board of governors, in the discharge of its duties, is engaged in the performance of a governmental function of the State.

This Court has held in numerous cases that proceedings against boards and commissions, created by the Legislature as agencies of the State, are suits against the State within the meaning of Article VI, Section 35 of the Constitution of West Virginia, even though the State is not named as a party in such proceeding.

An action against the State Road Commission to recover damages to private property caused by the construction of a public road is a suit against the State and can not be maintained. *Mahone* v. *The State Road Commission of West Virginia,* 99 W. Va. 397, 129 S. E. 320. A mandamus proceeding against the State Road Commission to compel the payment of a judgment against it for compensation for land appropriated for road purposes without purchase or condemnation is within the constitutional provision which forbids a suit against the State. *Stewart* v. *The State Road Commission of West Virginia,* 117 W. Va. 352, 185 S. E. 567. An action in assumpsit against the State Road Commission, for breach of contract, is a suit against the State and is violative of the same constitutional provision and is not maintainable. *Watts* v. *State Road Commission of West Virginia,* 117 W. Va. 398, 185 S. E. 570.

An action against the West Virginia Liquor Control Commission, a public corporation, to recover the sum of $576.00, the purchase price of an undelivered portion of whiskey purchased by the plaintiff, was held to be a suit against the State. *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E.2d 609, 9 A.L.R.2d

1284, certiorari denied, 337 U. S. 914, 69 S. Ct. 1154, 93 L. Ed. 1724. In the *Schippa* case this Court said in the syllabus that "The State Liquor Control Commission is an agency of the State, engaged in the performance of governmental functions and duties, and, as such, is, under Section 35 of Article VI of the Constitution of this State, immune from suit"; and in the opinion with respect to the statutory provision that the commission might sue and be sued, which is similar to the statutory provision authorizing the board of governors to sue and be sued, this Court said that such a provision is not important because if the commission is an arm or an agency of the State a suit against it is equivalent to a suit against the State and that the Legislature exceeded its constitutional power when it authorized suits against the commission. In *Barber, Adm'x.* v. *Spencer State Hospital,* 95 W. Va. 463, 121 S. E. 497, this Court held in the syllabus that "Where one is employed by a state institution under the management of the Board of Control, and in the course of such employment sustains injuries from which he dies, an action for damages brought by his administrator against such institution is in effect a proceeding against the state, and a demurrer to the declaration asserting such claim is properly sustained." In *Miller* v. *State Board of Agriculture,* 46 W. Va. 192, 32 S. E. 1007, 76 Am. St. Rep. 811, the Board of Agriculture, though not incorporated, was held to be a State agency.

In the more recent case of *Hamill* v. *Koontz,* 134 W. Va. 439, 59 S. E.2d 879, a proceeding by notice of motion for judgment, in which the plaintiffs sought to recover from Koontz, Tax Commissioner of the State of West Virginia, erroneous payments of taxes, this Court held that such proceeding, though authorized by statute, was a suit against the State in violation of Article VI, Section 35 of the Constitution of West Virginia and could not be maintained. In the opinion in the *Hamill* case this Court used this pertinent language: "The tax commissioner, in receiving the taxes paid to him by the plaintiffs, including

the erroneous excess beyond the amounts due and owing by them, was engaged in the discharge of a governmental function in behalf of the State, and in so doing was exercising the powers conferred, and discharging the duties imposed, upon him in his official capacity as the representative of the State. The judgment which the plaintiffs seek to recover in this proceeding, if satisfied, would be paid from funds in the treasury of the State. The interest of the State is directly affected and involved with respect to funds belonging to it and in its custody. In consequence this proceeding is in reality a suit against the State and, being within the prohibition of the constitutional provision, can not be maintained. In attempting to authorize a suit against the tax commissioner to recover any tax improperly collected, the Legislature exceeded its constitutional power and the statute, Chapter 33, Section 8, Acts of the Legislature, 1933, First Extraordinary Session, Michie's Annotated Code, 1949, 11-13-8, to the extent that it undertakes to authorize such suit, is invalid as violative of Article VI, Section 35, of the Constitution of this State."

The opinion in the *Hamill* case also contains this quotation from 49 Am. Jur., States, Territories and Dependencies, Section 92: "While a suit against state officials is not necessarily a suit against the state, within the rule of immunity of the state from suit without its consent, that rule cannot be evaded by bringing an action nominally against a state officer or a state board, commission, or department in his or its official capacity when the real claim is against the state itself, and the state is the party vitally interested. If the rights of the state would be directly and adversely affected by the judgment or decree sought, the state is a necessary party defendant, and if it cannot be made a party, that is, if it has not consented to be sued, the suit is not maintainable. The state's immunity from suit without its consent is absolute and unqualified, and a constitutional provision securing it is not to be so construed as to place the state within the

reach of the process of the court." Of course, the constitutional immunity of the State of West Virginia from suit by Article VI, Section 35 of the Constitution of this State can not be waived by the Legislature or any other instrumentality of the State.

In *The City of Charleston* v. *Southeastern Construction Company,* 134 W. Va. 666, 64 S. E.2d 676, this Court held that the State Office Building Commission, which by statute might sue and be sued and which was authorized to construct a building or buildings upon real property owned by the State and which was purchased by money appropriated for that purpose, was a State agency, and, as such, was an arm of the State and, under Article VI, Section 35 of the Constitution of this State, was immune from suit.

In *State ex rel. The Board of Governors of West Virginia University* v. *Sims,* 134 W. Va. 428, 59 S. E.2d 705, a mandamus proceeding to compel the Auditor of this State to honor a requisition for payment for medical and hospital services to a student athlete injured in an intercollegiate contest and to draw his warrant payable to the claimant, this Court granted the writ and in considering the provisions of Sections 1 and 1-a, Article 11, Chapter 18, Code, 1931, as amended, which are the statutory provisions involved in this proceeding, used this language in point 2 of the syllabus: "By legislative fiat, Code, 18-11-1, as amended by Chapter 73, Acts of the Legislature, 1947, and Section 1-a, Chapter 89, Acts of the Legislature, 1947, the board of governors of West Virginia University is a public and governmental body and as such is an arm of the State, vested with a wide discretion as to the expenditure of money derived under the provisions of Section 2, Article 1-a, Chapter 83, Acts of the Legislature, Regular Session, 1943, and deposited in the state treasury in the 'State Special Athletic Receipts Fund.'"

Under the foregoing authorities the Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State and, under Article VI, Section 35 of the Constitution of this State, is immune from suit to enforce payment of the monetary claim of the petitioner against the board. The judgment which the plaintiff would seek in a suit against the board of governors, if satisfied, would be paid from funds in the treasury of the State. The interest of the State would be directly affected and involved in any suit to collect the claim against the board of governors with respect to funds belonging to and in the custody of the State. By reason of the immunity of the board of governors from suit, the State Court of Claims, under Section 13, Article 2, Chapter 14, Code, 1931, as amended, which provides, in part, that its jurisdiction shall extend to claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the State or any of its agencies, which the State should in equity and good conscience discharge and pay, has jurisdiction of a monetary claim against the Board of Governors of West Virginia University.

*Hope Natural Gas Company* v. *West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S. E.2d 630, cited and relied upon by the defendants, does not apply to and is not controlling in the decision of this proceeding.

The rights and powers conferred and the duties imposed by the respective statutes upon the Board of Governors of West Virginia University and the West Virginia Turnpike Commission differ materially and in many respects, particularly with reference to funds and moneys used and administered by the board and by the commission. The moneys accepted and received by the board of governors and on which it depends for its financial support are paid into the State treasury, whereas the moneys accepted and received by the commission are not required to be deposited in the State treasury but are administered under the supervision of the commission. The later case of *Christo* v. *Dotson,* 151 W. Va. 696, 155

S. E.2d 571, in which the liability of the commission for damages caused by the failure of the commission to keep the turnpike in repair was recognized but not imposed, and the early case of *Tompkins* v. *The Kanawha Board,* 19 W. Va. 257, in which the Kanawha Board was held liable for damage occasioned by its negligence in failing to discharge its duties and that a suit against the board was not a suit against the State, are also clearly distinguishable from the case at bar.

As mandamus is the proper remedy to require the State Court of Claims to assume jurisdiction of the monetary claim of the petitioner against the Board of Governors of West Virginia University, the writ of mandamus as prayed for is awarded.

*Writ awarded.*