Peter KONDOS, Plaintiff,

v.

The WEST VIRGINIA BOARD OF REGENTS, a statutory corporation under the laws of the state of West Virginia, and Roland H. Nelson, Jr., Defendants.

Civ. A. No. 2744.

United States District Court,
S. D. West Virginia,
Huntington Division.

Oct. 26, 1970.

Thomas E. Medeiros, Huntington, W. Va., for plaintiff.

Cletus B. Hanley, Deputy Atty. Gen. of West Virginia, and Joseph E. Hodgson, Asst. Atty. Gen. of West Virginia, Charleston, W. Va., for the West Virginia Bd. of Regents.

Robert G. Perry, Charleston, W. Va., for Roland H. Nelson, Jr.

CHRISTIE, District Judge:

This diversity matter is before the Court on the respective motions of the defendants to dismiss.

The gravamen of the complaint is that on or about April 14, 1969, the plaintiff was employed for the term of one year as an assistant football coach at Marshall University, a state institution of higher learning, operated under the jurisdiction of the defendant, The West Virginia Board of Regents, with the defendant, Roland H. Nelson, Jr., as the president and chief executive officer of the school, and that in August following, the contract was wrongfully terminated under circumstances reflecting on plaintiff's

good name and character. Monetary damages only are prayed for in this action.

■ While the motions assign several grounds of dismissal, the threshold question raised by each is that the complaint fails to state a maintainable cause of action by reason of the provisions of Article VI, Section 35, of the Constitution of West Virginia, granting the state of West Virginia immunity from suit except as a garnishee or suggestee in garnishment or attachment proceedings. 1 W.Va.Code (Constitutions) p. 116. While the instant action is not against the state directly, but against an agency of the state instead, the constitutional provision has been interpreted by the state's highest court to apply to and protect state agencies and officials when engaged in the performance of governmental functions, and that it cannot be circumvented by making an agency or official of the state the defendant rather than the state itself. Mahone v. State Road Comm., 99 W.Va. 397, 129 S.E. 320 (1925); Hardy v. Simpson, 118 W.Va. 440, 190 S.E. 680, 191 S.E. 47 (1937); Schippa v. West Virginia Liquor Control Comm., 132 W.Va. 51, 53 S.E.2d 609 (1948), 9 A.L.R.2 1284; Stewart v. State Road Comm., 117 W.Va. 352, 185 S.E. 567 (1936); Hamill v. Koontz, 134 W.Va. 439, 59 S.E.2d 879 (1950); Hesse v. State Soil Conservation Committee, 153 W.Va. ——, 168 S.E.2d 293 (1969); City of Morgantown v. Ducker, 153 W.Va. ——, 168 S.E.2d 298 (1969). The highest court of the state of West Virginia has determined that West Virginia Board of Education (predecessor to the Board of Regents) is an agency and arm of the state and thus entitled to immunity from suit for monetary claims under the constitutional provision to which reference is made. City of Morgantown v. Ducker, supra. This decision is binding upon this Court in this diversity action under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, requiring federal courts to apply state substantive law, and it was recently applied by this Court in a breach of contract case and upheld by the Fourth Circuit in Dixon v. West Virginia University Board of Governors, 427 F.2d 12 (1970). However, for the provision to be operative, the particular function involved must be governmental rather than proprietary. Ward v. County Court of Raleigh County, 141 W.Va. 730, 93 S.E. 2d 44 (1956); Whitney v. Ralph Myers Contracting Corp., 146 W.Va. 130, 118 S.E.2d 622 (1961). The defendant Board of Regents unquestionably meets this test, for it is elemental that education, which is its business, is a governmental function of the state and, of course, the carrying on of an athletic program is an important and necessary element in the educational process, especially at institutions of higher learning. Glover v. Sims, 121 W.Va. 407, 3 S.E.2d 612 (1939); State ex rel. Board of Governors of West Virginia University v. Sims, 134 W.Va. 428, 59 S.E.2d 705 (1950).

■ The plaintiff in the instant action would avoid the effect of the sovereign immunity doctrine by relying upon Section 3, Article 26, Chapter 18 of the West Virginia Code authorizing the Board of Regents to sue and be sued. This reliance, however, is misplaced, for a similar statutory provision granting the Board of Regents' predecessor the power to sue and be sued was held to be of no avail, since the state's immunity is absolute and cannot be waived by the state legislature or by any other state instrumentality. City of Morgantown v. Ducker, supra. The same result has been reached with reference to other agencies of the state. See Hamill v. Koontz, supra; Ward v. County Court of Raleigh County, supra; State ex rel. Scott v. Taylor, 152 W.Va. 151, 160 S.E.2d 146 (1968). This is so because of the recognition that public revenues would have to be appropriated to pay any money damages which might be recovered in an action against the state or one of its governmental agencies, were a waiver of its sovereign immunity permitted. Hamill v. Koontz, supra; Barber v. Spen-

cer State Hospital, 95 W.Va. 463, 121 S.E. 497 (1924).

Assuming, however, that Nelson as the agent of the Board of Regents delegated to effectuate termination of plaintiff's employment, did, in the course of performing the assignment, make the untrue accusations and cause the slanderous statements to be published against the plaintiff, as charged, can the Board of Regents be held accountable for his actions on the principle that the principal is responsible for the acts of the agent while committed within the scope of, or within the apparent scope of, the agent's authority? It cannot in the context of the instant case. This principle relates to a private agency relationship and is not applicable to public bodies, for it has long been firmly established in West Virginia that the state may not be held liable for illegal or unauthorized acts of its officers. Samsell v. State Line Development Co., W.Va., 174 S.E.2d 318 (1970); State v. Chilton, 49 W.Va. 453, 39 S.E. 612 (1901); Carper v. Cook, 39 W.Va. 346, 19 S.E. 379 (1894); Armstrong Products Corp. v. Martin, 119 W. Va. 50, 192 S.E. 125 (1937), 1 M.J. (Agencies) Sec. 9, page 452; 15 M.J. (Public Officers) Sec. 46, pages 103–104.

We, therefore, unhesitatingly conclude that the constitutional prohibition referred to constitutes an effective bar to the maintenance of the action against the Board of Regents. The Board's motion to dismiss accordingly must be granted.

We pass now to defendant Nelson.

The complaint alleges that the Board of Regents designated Nelson as its agent and gave him authority to unilaterally terminate plaintiff's employment contract, and while it is not affirmatively so alleged, it nevertheless may be inferred from a reading of the entire complaint that he did in fact carry out the task assigned him. Under such circumstances, he is protected by the doctrine of sovereign immunity to the same extent as the Board is protected by it, and since there is no specific averment that Nelson transgressed the limits of his authority in carrying out the orders of the Board, the breach of contract aspect of plaintiff's action against Nelson is not maintainable. Mahone v. State Road Comm., supra; Hardy v. Simpson, supra; Schippa v. West Virginia Liquor Control Comm., supra; Stewart v. State Road Comm., supra; City of Morgantown v. Ducker, supra.

The complaint, however, also alleges tortious conduct against Nelson in that he did libel and slander the plaintiff. In this regard the complaint avers that Nelson "wilfully and arbitrarily caused to be published untrue, slanderous, malicious and defamatory statements about plaintiff which had the effect of holding plaintiff before the public as the chief wrongdoer in the institution and execution of certain recruitment policies that had been pursued by the athletic department of Marshall University"; that Nelson "knew his accusations * * * were untrue," and that as a result plaintiff "suffered * * * the loss of his good name and reputation in his chosen profession and has been otherwise damaged irreparably."

Do these averments state a cause of action under West Virginia law for libel and slander? Reference to relevant West Virginia case law discloses that the principle is well recognized there that a public officer acting within the scope of his authority in the performance of his official duties may not be held civilly liable for the consequences of his acts, unless it be shown that he acted wilfully, maliciously or corruptly, in which event he may be held liable as an individual. Downs v. Lazzelle, 102 W.Va. 663, 136 S.E. 195 (1926); State ex rel. Printing-Litho, Inc. v. Wilson, 147 W.Va. 415, 128 S.E.2d 449 (1962). The reason for the rule against liability is obvious: It is designed to protect public officers from harassment by private individuals claiming to have been injured as a result of official acts. See Sims v. United States, 252 F.2d 434, 441 (4th Cir. 1958); Barr v. Matteo, 360 U.S. 564, 569, 79 S.Ct. 1335, 3 L.Ed.2d 1434, et seq. (1959). But the reason for the exception to the

rule is equally understandable—it is designed to curb public officials from the use of wanton, arbitrary and abusive power under color of public office.

■■ A careful review of the complaint convinces us that the averments therein do not sufficiently state a cause of action under the exception to the general rule noted. We can find in the complaint no words or material attributed to Nelson that would appear to be libelous per se and sufficient to support an inference of malice. Montgomery Ward & Co. v. Watson, 55 F.2d 184 (4th Cir. 1932); Sutherland v. Kroger Co., 144 W.Va. 673, 110 S.E.2d 716 (1959). True it is that the complaint avers that Nelson did cause "untrue" and "slanderous" statements to be published concerning plaintiff, but just what such statements were or in what respect they were untrue and slanderous is not alleged. It is thus impossible for us to determine from the complaint just what Nelson said or published that was defamatory. In West Virginia, the rule appears to be that for a cause of action for libel and slander to be correctly pleaded, the exact words charged to have been used or material caused to have been published by the defendant must be alleged with particularity. Porter v. Mack, 50 W.Va. 581, 40 S.E. 459 (1901). This appears to be the rule generally, with some modifications. See 50 Am.Jur.2d (Libel & Slander) Sec. 408. Here we are left to innuendo. Innuendoes alone will not sustain an action for libel and slander. Their only function is to explain matters already expressly alleged; not to enlarge their meaning. Johnson v. Brown, 13 W.Va. 71 (1878); State v. Aler, 39 W.Va. 549, 20 S.E. 585 (1894); Argabright v. Jones, 46 W.Va. 144, 32 S.E. 995 (1899); Sutherland v. Kroger Co., supra; Parker v. Appalachian Electric Power Co., 126 W.Va. 666, 30 S.E.2d 1 (1944); Klein v. Belle Alkali Co., 229 F.2d 658 (4th Cir. 1956).

Therefore, for the reasons stated, Nelson's motion to dismiss must also be granted, but with leave to the plaintiff to file an amended complaint within ten (10) days alleging with particularity the libelous words uttered and slanderous material caused to be published by Nelson against him and the time and circumstances thereof.

In conclusion, the Court would call plaintiff's attention to his right to submit his claims against the defendants to the West Virginia Court of Claims. That court has jurisdiction to hear and adjudicate them under West Virginia Code, 14–2–13, where it is provided, in part, that the state's Court of Claims may hear and adjudicate claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state or any of its agencies, which the state should in equity and good conscience satisfy and pay, and the state's highest court, in City of Morgantown v. Ducker, supra, has specifically held that the jurisdiction of the Court of Claims extends to an agency of the state such as The West Virginia Board of Regents.