## HUGHES–BECHTOL, INC., Plaintiff-Appellant,

v.

## WEST VIRGINIA BOARD OF REGENTS, Defendant-Appellee.

### No. 82–3217.

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1984.

Decided June 18, 1984.

John O. Henry (argued), Estabrook, Finn & McKee, Dayton, Ohio, for plaintiff-appellant.

Victor A. Barone, Deputy Atty. Gen., (argued), Charleston, W.V., James W. Knisley, Dayton, Ohio, for defendant-appellee.

---

Before EDWARDS and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

This case originated in the Federal District Court for the Southern District of Ohio, where plaintiff filed its Complaint against the defendant, West Virginia Board of Regents, praying for judgment in the amount of $1,521,826 compensatory and punitive damages and for declaratory relief pursuant to 28 U.S.C. § 2201 and F.R. Civ.P. 57. The Complaint alleged that plaintiff is and was at all times mentioned therein, a corporation duly organized and existing under and by virtue of the laws of the State of Ohio, and that the defendant, West Virginia Board of Regents, is and was a citizen of the State of West Virginia, and that the Court has diversity jurisdiction under and pursuant to 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331(a) because a question has arisen under the Eleventh Amendment to the Constitution of the United States.

The defendant, West Virginia Board of Regents, filed a motion to dismiss for lack of jurisdiction alleging that it was not a citizen of West Virginia, but was an agency or alter-ego of the State. The District Court granted the motion to dismiss in an opinion in which it adopted findings of fact and conclusions of law and held that the West Virginia Board of Regents was not a citizen of the State of West Virginia but was in truth and fact an arm or agency of the State, and that diversity of citizenship required under 28 U.S.C. § 1332 for jurisdiction of the Court in the present case did not exist. *Hughes-Bechtol, Inc. v. West Virginia Board of Regents*, 527 F.Supp. 1366 (S.D.Ohio 1981). The court also denied plaintiff's motion for a preliminary injunction. Plaintiff then filed a motion to alter or amend the judgment, which motion the court denied.

Plaintiff has appealed therefrom to this Court, arguing that defendant is not the alter-ego of the State, and that the suit is not otherwise barred by the Eleventh Amendment. For the reasons hereinafter stated, we affirm.

## I

### Facts

Pertinent facts were found by the District Court as follows:

1. Hughes-Bechtol, Inc. (also "contractor") is a corporation organized under the laws of the State of Ohio, with a principal place of business in Ohio, and an annual volume of business of approximately thirty million dollars ($30,000,000).

2. Marshall University is a state university located in Huntington, West Virginia. Marshall University has an enrollment of approximately twelve thousand students, and participates in Division I athletics.

3. In 1979, the West Virginia Board of Regents (also "owner") solicited bids in connection with the construction at Marshall University of Henderson Center, which was intended to be a multipurpose physical education facility including a basketball arena seating ten thousand persons, classrooms for the department of health and physical education, and offices for the athletic department. Also included in this project was the renovation of an existing building, Gullickson Hall.

4. Hughes-Bechtol was awarded a contract in the amount of three million, one hundred sixty two thousand, one hundred and seventy-three dollars ($3,162,173.00) for the mechanical work for the Multi-Purpose Physical Education Facility. According to the terms of the contract, the work to be performed was to be commenced upon the date specified in the "Notice to Proceed" given by the Board to Hughes-Bechtol. From the time specified, Hughes-Bechtol would have eight hundred and fifty (850) consecutive calendar days to fully complete the project.

5. On April 5, 1979, a purchase order was issued by the State of West Virginia, Department of Finance and Administration for the above contract price.

6. The original anticipated completion date for the Henderson Center Project was April 6, 1981, but at the time of the injunction hearing, the physical activities center was scheduled for occupancy on October 15, 1981, due to delays in the project. At the time of the hearing herein, the project was ninety percent (90%) finished.

7. During the first year of the contract, little progress was made on the construction project. Hughes-Bechtol requested an extension of time and payments for the increased costs due to the delay, but the Board refused, and instead directed that Hughes-Bechtol perform the unfinished work in the time remaining under the contract.

8. Paragraph 7.9.1 of the contract between the Board and Hughes-Bechtol provided that all disputes arising between the owner and the contractor would "be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association," that the agreement to arbitrate "shall be specifically enforceable under the prevailing arbitration law," and that "the award entered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

9. On December 11, 1980, Hughes-Bechtol filed a demand for arbitration with the Cincinnati office of the American Arbitration Association. The arbitration inquiry was bifurcated, with consideration being first given to whether the issue was one subject to arbitration. On February 20, 1981, the arbitrator ruled that the matter was arbitrable, and notified the parties of his decision. A hearing on the claims of Hughes-Bechtol was held, and on June 9, 1981, after the filing of the within lawsuit, the arbitrator issued his decision, finding that Hughes-Bechtol was entitled to an additional sum of five hundred twenty-one thousand three hundred twenty-six dollars and forty-eight cents ($521,326.48).

10. The Board did not participate directly in the arbitration hearings, but did have a legal representative present. On various occasions, the Board and the West Virginia Attorney General's Office advised Hughes-Bechtol and the American Arbitration Association that the Board of Regents was not authorized to engage in binding arbitration.

11. Paragraph 9.7 of the contract provided that if an amount awarded through arbitration was not paid by the owner, the contractor was permitted to stop work. After the Board refused payment of the arbitration award, Hughes-Bechtol removed its work forces from the Henderson Center construction site on July 20, 1981.

12. The other contractors on the Henderson Center project have agreed to pursue remedies for contractual claims against the Board in the West Virginia Court of Claims.

.    .    .    .    .

18. Payments for the Henderson Center project come from the State treasury of West Virginia. The project was financed by a public bond sale, with student revenues for future years obligated to pay for the project. All funds expended by the Board of Regents are state funds from the state treasury and may only be spent pursuant to an appropriation by the West Virginia legislature. All funds received by the Board from all other sources such as federal funds or gifts must be deposited in the state treasury and may be expended only for their specified purposes, and after appropriation by the West Virginia legislature.

19. If Hughes-Bechtol does not complete its contractual obligations, the Board intends to secure other contractors to perform the work.

20. The State of West Virginia has authorized suit to be brought against the

State in the West Virginia Court of Claims.

## II

### Law

■ The question whether the Board is and was a citizen of West Virginia or an agency or alter-ego of the State for purposes of diversity jurisdiction is purely a question of federal law. *See Long v. Richardson*, 525 F.2d 74, 79 (6th Cir.1975). In this case, however, we hold that it is governed by the law of West Virginia.

The district Court in its opinion stated:

The principle is well settled that a state may not be considered a citizen in order to establish diversity jurisdiction. In *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894) (*Postal Telegraph*), the State of Alabama had initiated suit in an Alabama state court against a New York corporation in order to recover taxes owed to the State. *Id.* at 482, 483, 15 S.Ct. at 192, 193. The Defendant removed the case to federal court, but the Supreme Court ruled that removal was improper, since neither diversity nor federal jurisdiction was present. *Id.* at 487, 15 S.Ct. at 194. With respect to diversity, the Court stated that:

A state is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States; and that the Circuit Court of the United States has no jurisdiction of it unless it arises under the Constitution, laws or treaties of the United States.

*Id.* (citations omitted).

In *State Highway Comm'n of Wyoming v. Utah Constr. Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929) (*Wyoming Highway Comm'n*), a Utah citizen filed a breach of contract action against the Wyoming State Highway Commission in a Wyoming district court, alleging jurisdiction on the basis of diversity of citizenship. *Id.* at 198, 49 S.Ct. at 105. Although the State of Wyoming had not been named as a party to the action, the Court held that since the suit was in effect against the State, diversity of citizenship could not exist. *Id.* at 199–200, 49 S.Ct. at 105–106. The Court appeared to premise its determination that the State was the real party in interest on the following factors: (1) the highway commission was merely an arm or alter ego of the state, "with no funds or ability to respond in damages," *id.* at 199, 49 S.Ct. at 106; and (2) neither the Highway Commission nor its members had assumed any direct or personal responsibility by entering into the contract in question. *Id.* Significantly, the Court found it unnecessary to consider the effect of the State's grant to the Highway Commission of the power to sue or be sued, or its later withdrawal of that power. *Id.* The Court indicated that since the State was not considered to be a citizen for purposes of diversity, "[N]o consent by the State to submit itself to suit could affect the question of diverse citizenship." *Id.* at 199–200, 49 S.Ct. at 105–106. Thus, even should a state consent to suit in federal court, that act itself cannot create diversity jurisdiction.

Like the Highway Commission in the previously cited case, the Board of Regents is a statutorily-created creature. W.Va.Code § 18–26–1 (1969) specifically provides that:

The purpose of the legislature in the enactment of this article is to establish a *state agency to be known as the West Virginia Board of Regents* which will have the general determination, control, supervision and management of the financial, business and educational policies and affairs of all State Colleges and Universities.

(emphasis added). Moreover, an examination of West Virginia law reveals that the board has no funds or ability to respond in damages but is merely a conduit through which budget requests from the state universities, and corresponding appropriations from the West Virginia leg-

islature, flow. For example, W.Va.Code § 18–26–8 (1981) lists certain duties of the Board, which involve, *inter alia:* (1) directing the preparation of budget requests for state universities; (2) the submission of budget requests and analysis of requests to the legislature; (3) compilation of an annual report indicating the fiscal performance of the state system of higher education. Although some of these duties were more specifically delineated by the amendment of § 18–26–8 in 1981, the essential nature of the Board's function has not changed from former practice. *See* former W.Va.Code § 18–26–8 (1969).

Other pertinent cases which hold that the Board is an agency and alter-ego of West Virginia are *Kondos v. West Virginia Board of Regents,* 318 F.Supp. 394 (S.D.W.Va.1970), *aff'd,* 441 F.2d 1172 (4th Cir.1971); *City of Morgantown v. Ducker,* 153 W.Va. 121, 168 S.E.2d 298 (1969); and *West Virginia Board of Regents v. Fairmont, Morgantown and Pittsburgh R.R. Co.,* 155 W.Va. 863, 189 S.E.2d 40 (1972). *Cf. Bailey v. Ohio State University,* 487 F.Supp. 601 (S.D.Ohio 1980); *Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347 (6th Cir.1975).

The West Virginia Constitution Article VI § 35 provides:

The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

The state and its agencies performing state functions statewide are entitled to this absolute immunity.

We also emphasize that the Purchase Order issued by the State on April 5, 1979, *supra,* specifically constituted acceptance of the agreement "made by and between the State of West Virginia, by the Commissioner of Finance and Administration for the West Virginia Board of Regents" and Appellant.

The Constitution, statutes, and federal and state case law of West Virginia, as well as the undisputed facts, are dispositive of the status of the Board as an agency and alter-ego of the State, and of the absence of diversity jurisdiction in this case.

■ The District Court had no jurisdiction to determine appellant's rights under 28 U.S.C. § 1331(a) involving the Eleventh Amendment to the Constitution, as this statute does not confer jurisdiction. It is settled that a suit arises under the Constitution only if the plaintiff's own cause of action is based thereupon, and it is not enough that plaintiff alleges some anticipated defense to his cause of action which can be raised under the Constitution. *See Louisville and Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). The same result attaches to a suit for declaratory relief. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 672, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). We, therefore, decline to address the merits of the Eleventh Amendment issues raised by appellant. *See Escambia County, Florida v. Henry T. McMillan,* —— U.S. ——, ——, 104 S.Ct. 1577, 1579, 80 L.Ed.2d 36 (1984), citing *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Justice Brandeis, concurring).

The state courts of West Virginia that have jurisdiction over the Board can be resorted to by appellant. It is not necessary for us to decide other issues raised by appellant, as they may be addressed when appellant resorts to those courts.

On the issue of arbitration, *see McDonald v. City of West Branch, Michigan,* —— U.S. ——, 104 S.Ct. 1799, 80 L.Ed.2d 302 (U.S.1984), in which the Supreme Court held that federal courts should not, in actions under 42 U.S.C. § 1983, afford res judicata or collateral estoppel effect to awards in arbitration proceedings brought pursuant to terms of the collective bargaining agreement.

The judgment of the District Court is affirmed.