IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**October 30, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0932

CHRISTOPHER D. ADKINS,
Plaintiff Below, Petitioner

v.

AMERICAN MINE RESEARCH, INC.,
Defendant Below, Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Case No. 11-C-307

REVERSED AND REMANDED

Submitted:  September 9, 2014
Filed:  October 30, 2014

J. Michael Ranson, Esq.               Lawrence E. Morhous, Esq.
Cynthia M. Ranson, Esq.               Jerad K. Horne, Esq.
RANSON LAW OFFICES                    BREWSTER, MORHOUS, CAMERON,
Charleston, West Virginia             CARUTH, MOORE, KERSEY &
*and*                                 STAFFORD, PLLC
G. Patrick Jacobs, Esq.               Bluefield, West Virginia
JACOBS LAW OFFICE, PLLC               Attorneys for Respondent
Charleston, West Virginia
Attorneys for Petitioner

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      """A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

4.      "Pursuant to W. Va. Code § 21-5-1(c) (1987), whether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term 'wages' are determined by the terms of employment and not by the provisions of W. Va. Code § 21-5-1(c)." Syl. Pt. 5, in part, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999).

i

5.     The determination as to whether "wages," as defined in West Virginia Code § 21-5-1(c) (2013 Repl. Vol.), are payable pursuant to the requirements of West Virginia Code § 21-5-1 *et seq.* (2013 Repl. Vol.) is governed by the terms of the employment agreement, whether written or in the form of a consistently applied unwritten policy.

6.     "'"A motion by both plaintiff and defendant for summary judgment under Rule 56, R.C.P. does not constitute a determination that there is no issue of fact to be tried and if a genuine issue of material fact is involved both motions should be denied." Syl. pt. 3, *Haga v. King Coal Chevrolet Company*, 151 W.Va. 125, 150 S.E.2d 599 (1966).' Syl. Pt. 4, *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88 (1985)." Syl. Pt. 9, *Mountain Lodge Assoc. v. Crum & Forster Indemnity Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001).

WORKMAN, Justice:

Petitioner/plaintiff below Christopher Adkins (hereinafter "petitioner") appeals the Circuit Court of Kanawha County's August 30, 2013, order granting summary judgment to respondent/defendant below American Mine Research, Inc. (hereinafter "AMR") in this case brought pursuant to West Virginia Code § 21-5-1 *et seq.*, (2013 Repl. Vol.) the "Wage Payment and Collection Act" (hereinafter "WPCA"). In granting summary judgment to respondent, the circuit court found that AMR's employment agreement with petitioner contemplated that he was paid commissions upon shipment of products and therefore AMR did not violate the WPCA.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the circuit court erred in granting respondent's motion for summary judgment. We therefore reverse and remand for further proceedings below inasmuch as we find that the circuit court failed to identify the critical factual issues requiring development and therefore erroneously entered summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner was employed by AMR as an at-will sales representative from October 1, 2000, until August 15, 2010, when he voluntarily resigned. At the beginning of petitioner's tenure with AMR, AMR primarily sold carbon monoxide monitoring

1

systems; in 2006, it began developing and manufacturing tracking and communication devices for miners in response to the Mine Improvement and New Emergency Response Act of 2006. Petitioner began selling the tracking systems in 2008; however, the tracking systems were not approved by the Mine Safety and Health Administration until September, 2009. During the time that the tracking systems were pending approval, petitioner sold approximately $15 million in systems and associated equipment. Although petitioner had no written commission agreement, petitioner was customarily paid his commissions in the month following shipment of the products he sold. The tracking systems did not begin shipping until December, 2009. In November, 2009, just before the tracking devices began shipping, AMR changed petitioner's commission structure essentially cutting his commission into a third of what he expected to receive on sales of the tracking systems already made but not yet shipped.[1] It is this alteration of his commission structure and its application which gives rise to the suit.

When petitioner began selling the tracking systems, his commission rate structure was as follows: $46,000.00 in salary plus a) 1% of sales between $40,000.00 and $80,000.00; b) 2% of sales between $80,000.00 and $100,000.00; and c) 3% of sales

_____

[1] AMR's fiscal year began on October 1; therefore any changes to petitioner's commission structure or base salary typically occurred around this time. In 2009, however, it took AMR until November to determine exactly what his new rate structure would be and AMR made it retroactive to October 1. Petitioner testified that, in explanation for why his commissions were changing, he was told "you can't make more than the President of the company." AMR's President testified that "[petitioner] made a fair amount of money for what he did. It wasn't only him that helped sell these systems just because it was his territory."

over $100,000.00 (hereinafter the "2004 rate structure"). In November, 2009 and retroactive to October 1, 2009, petitioner's commission rate structure was altered as follows: $50,000.00 in salary plus a) 0% for sales up to $300,000.00; b) 3% over $300,000.00 with a cap of $85,000.00 (hereinafter the "2009 rate structure").

Petitioner concedes that he was paid the proper commission for all orders shipped prior to October 1, 2009. Petitioner further concedes that AMR's custom and practice of paying commissions the month after the product shipped was agreed to and accepted by him. Finally, petitioner concedes that, as an at-will employee, AMR had the right to enact *prospective* changes to the rate structure. Petitioner, however, takes issue with AMR's application of the 2009 rate structure to sales made prior to that time. Although he agrees that AMR's payment of those commissions upon shipment was proper, he disagrees with application of the rate structure in place at the time of shipment—the 2009 rate structure, as opposed to the rate structure in place at the time of sale—the 2004 rate structure.[2] Allegedly as a result of this dispute, petitioner resigned in August, 2010.

Petitioner filed the instant action asserting 1) intentional infliction of emotional distress; and 2) violation of the WPCA. In support of his WPCA claim, petitioner alleges that AMR violated West Virginia Code § 21-5-4(c), which requires that

---

[2] The parties disagree as to the amount which the application of the 2009 rate structure allegedly deprived petitioner.

3

"[w]henever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday." Petitioner alleged that upon his resignation, AMR was required to pay him the commissions which he was due and owing by the next regular payday, specifically the amounts owing under the 2004 rate structure for items that he sold while that structure was in place. The parties filed cross-motions for summary judgment. In short, petitioner argued that the commission was "earned" when the sale was made; therefore, the rate structure in place at the time of sale was applicable. Respondent argued that AMR's "custom and practice" of paying petitioner a month after products shipped established that their employment agreement as to the accrual and payment of commissions contemplated that commissions were not "earned" until the product was shipped.

Citing an unpublished Fourth Circuit opinion, the circuit court agreed that the WPCA "'does not regulate the amount of wages, and it does not establish how or when wages are earned.'" *Gregory v. Forest River, Inc.*, 369 Fed. Appx. 464, 469 (4th Cir. 2010). As such, the court concluded that since "the *amount* of wages is at issue in this matter . . . the implied agreement and custom and business practices of Defendant . . . do not contravene any provision of the WPCA." The circuit court acknowledged the "general rule" that "a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer," but found that petitioner's "compensation package and [] agreement therewith constitute[d] an

4

exception to the 'general rule' such that [petitioner] was not entitled to any commission compensation until shipment of ordered products." This appeal followed.

## II. STANDARD OF REVIEW

As is well-established, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Moreover, "'"[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 2, *Id.* "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Id.*

## III. DISCUSSION

This Court has observed that the WPCA is "remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld" and therefore must be construed "liberally so as to furnish and accomplish all the purposes intended." *Mullins v. Venable*, 171 W.Va. 92, 94, 297 S.E.2d 866, 869 (1982) (citation omitted); *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995) (citations omitted). West Virginia Code §

5

21-5-4(c) provides: "Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday." "Wages" are statutorily defined to include commissions: "The term 'wages' means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." W. Va. Code § 21-5-1(c).

In this case, petitioner contends that when he resigned, the accrued commissions he claims were due and owing under the 2004 rate structure should have been paid to him by the next pay day. Respondent contends that petitioner was customarily paid upon shipment, impliedly (but not expressly) arguing that the rate structure in place at the time of shipment was used to calculate commissions, and that he was not due and owing any additional commission upon his resignation. In support of their positions, the parties argue two competing sets of largely extra-jurisdictional cases[3] which purport to resolve the issue of when sales commissions are "earned" for purposes of the WPCA.

To that end, the parties do appear to agree on the applicability of the following generally accepted rule as to entitlement to commission:

---

[3] Petitioner also argues that this issue is resolved by application of the UCC provision regarding sales; obviously, however, the UCC has no applicability to employment relationships.

6

> As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by the conduct of the parties which clearly demonstrates a different compensation scheme.

*Vector Eng'g and Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind. Ct. App. 1982) (citations omitted). *See Little v. USSC Group, Inc.*, 404 F. Supp.2d 849, 854 (E.D. Pa. 2005) ("Generally . . . the terms of the contract determine when commissions are computed and paid."); *Davis v. All American Siding & Windows, Inc.*, 897 N.E.2d 936, 940 (Ind. Ct. App. 2009) ("Absent some other arrangement or policy, when an employer makes an agreement to provide compensation for services, the employee's right to compensation vests when the employee renders the services." (quoting *Highhouse v. Midwest Orthopedic Institute, P.C.*, 807 N.E.2d 737, 739 (Ind. 2004)); *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672 (Md. 2001) ("[W]hether commissions are to be paid or what fringe benefits attach are matters for agreement in advance of the employment or to become a part of the undertaking during the employment."); *Hoffeld v. Shepherd Elec. Co., Inc.* 932 A.2d 1197, 1207 (Md. Ct. Spec. App. 2007) ("Whether an employee has earned a commission depends on the terms of employment."); *Oken v. Nat'l Chain Co.*, 424 A.2d 234, 235 (R. I. 1981) ("The general rule that a commission is earned when the order is placed is not absolute; it may be altered by a written agreement by, or the conduct of, the parties which clearly demonstrates a different compensation scheme."); *see also* 27 Am. Jur. *Employment Relationship* § 53 ("Generally, an

7

employee's right to a commission depends on the terms of the parties' contract; terms governing the payment of commissions may be a matter of agreement in advance of the employment or become a part of the undertaking during the employment.").

The prevailing theme of this rule, as applied in the context of the WPCA, is that the terms of the employment agreement will dictate when "wages" are earned for purposes of becoming payable pursuant to the WPCA. This principle has long been utilized in our State to determine entitlement to fringe benefits when made the subject of a WPCA claim. In Syllabus Point 5 of *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999), this Court held, in part:

> Pursuant to W. Va. Code § 21-5-1(c) (1987), whether fringe benefits have then accrued, are capable of calculation and payable directly to an employee so as to be included in the term "wages" are determined by the terms of employment and not by the provisions of W. Va. Code § 21-5-1(c).

*See Spano v. Metropolitan Life Ins. Co.*, 2011 WL 2180657 *3 (S.D.W. Va. 2011) ("In WPCA cases, courts must consider the specific employment agreement."). This is necessarily the case because the WPCA itself "does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990); *see McGough v. Broadwing Commc'ns, Inc.*, 177 F. Supp.2d 289, 294 (D.N.J. 2001) ("The WPCL does not create any substantive statutory right to wages or other forms of compensation; rather, it merely provides a statutory vehicle for employees to

8

recover earned wages from an employer who has breached an underlying contractual obligation to provide such compensation.").

We have further noted that the employment "agreement" may take the form of a consistently applied unwritten policy. *Ingram v. City of Princeton*, 208 W. Va. 352, 357, 540 S.E.2d 569, 574 (2000); *Gress v. Peterburg Foods, LLC*, 215 W. Va. 32, 37, 592 S.E.2d 811, 816 (2003) ("When employers have a consistently applied unwritten policy, employers have the protection offered by *Ingram* against a claim under the Wage Payment and Collection Act."). We therefore now hold that the determination as to whether "wages," as defined in West Virginia Code § 21-5-1(c) (2013 Repl. Vol.), are payable pursuant to the requirements of West Virginia Code § 21-5-1 *et seq.* (2013 Repl. Vol.) is governed by the terms of the employment agreement, whether written or in the form of a consistently applied unwritten policy.

In this case, of course, where the parties part ways is their characterization of the "agreement" between petitioner and AMR as to when his commissions were earned and therefore whether he was due and owing any unpaid commissions upon resignation. Respondent argues, and the circuit court agreed, that the practice of paying petitioner his commissions the month after shipment establishes that the employment agreement contemplated that petitioner's commissions were not earned until shipment. Respondent further notes that if orders were cancelled before shipment, petitioner would

9

not receive a commission, further evidencing their agreement that the commission was not "earned" until shipment.[4]

Petitioner, on the other hand, argues that when commissions are "payable" is irrelevant as to the parties' agreement as to when the commissions are "earned." Petitioner urges this Court to view this distinction as did the Supreme Court of Rhode Island in a factually similar case:

> Here, [employee] conceded that he was not paid his commissions until the goods were shipped by [employer], but such a concession is not clear proof that he was in agreement that his commissions were not *earned* until shipment was made. Rather this arrangement was but a manifestation of

---

[4] Respondent further argues heavily that two cases—an intermediate appellate case from Illinois and the unpublished 4th Circuit opinion upon which the circuit court relied—are determinative. In *Gregory v. Forest River, Inc.*, 369 Fed. Appx. 464, 469 (4th Cir. 2010), a three-judge panel (2-1) found that an employer's refusal to pay a terminated employee all accrued commissions, rather, keeping with a monthly pay-out schedule violated the WPCA. After correctly noting that the employment agreement governs when wages are earned, the court summarily concluded that only shipped units created "earned" commissions to which the employee was entitled. The court engaged in a fact-specific analysis of the particular written commission payment schedule in that case, none of which is applicable in this case which, in absence of a written agreement, requires analysis of the unwritten practices and policies of AMR.

Moreover, in *Geary v. Telular Corp.*, 793 N.E.2d 128 (Ill. App. 2003), the employer altered the employee's commission plan after the employee acquired "agreements to purchase" from clients. Although the facts of *Geary* are virtually identical to those presented herein, the appellate court in *Geary* simply stated that "[t]here is no issue of fact that commissions were earned when product shipped[]" with no discussion as to how or why it reached such conclusion. *Id.* at 133. Accordingly, we find these cases to be of little persuasive value as to the facts and issues as presented in this case.

10

> [employer's] accounting procedures in regard to when commissions would be *paid*.

*Oken*, 424 A.2d at 236 (second emphasis added). Petitioner, therefore, argues that he and AMR had no "agreement" as to which commission rate structure was applied to commissions paid and that the "general rule" that a commission is earned at the time of sale must prevail.

It is on this point that the record is frustratingly silent. Respondent offers no evidence of what the parties' course of conduct was relative to *which rate structure was used* to calculate commissions when they were finally paid upon shipping; rather, respondent myopically focuses on simply "when" commissions were paid. [5]

---

[5] Respondent argues that since petitioner conceded that he was paid "properly" up until October, 2009, he has conceded that he was always paid in the manner respondent urges, i.e. based upon the rate schedule in place upon shipment:

Q. Up until, say 2010, were your payments, your salary, your commissions, your vehicle, were they all paid properly as far as you know?

A. Up until 2009.

* * *

Q. If they shipped before October 1st and you were paid commissions, are you claiming that you were paid correctly?

A. Yes. I would have been paid correctly.

This may in fact be a critical concession if the record clearly reflected how those "properly" paid commissions were calculated in situations where an intervening commission change occurred between sale and shipment. Unfortunately, the record is unclear as to *how* petitioner's commission was calculated prior to October 2009; rather, respondent focuses exclusively on *when* it was paid.

11

Respondent's silence on this issue is particularly peculiar inasmuch as petitioner twice appears to concede in his briefs that new commission structures were in fact utilized to calculate commissions on sales which pre-dated the change in certain instances.[6] Despite this apparent concession, neither party explored these instances in the record below and therefore fail to offer any evidence upon which this Court could make a determination as to what the employment agreement contemplated as to how commissions were calculated, i.e. whether they were calculated using the rate structure in place upon *sale* or upon *shipping*. It is this determination that informs the issue of what the parties agreed relative to when commissions were "earned."

To that end, despite the parties' cross-motions for summary judgment, we find that the circuit court erred in failing to identify the critical issues of fact which must necessarily guide its application of the law. That is, the record is devoid of evidence regarding the parties' course of conduct as to *how* commission payments were calculated where there was an intervening change in commission structure. This factual development is critical to a determination as to what the consistently applied unwritten

---

[6] In petitioner's brief, he states, "AMR had at times made new compensation schemes retroactive, thus providing Adkins with something akin to a bonus[.]" Again in his reply brief, he states, "AMR had on occasion applied the new commission structure to pending commission payments giving Adkins something akin to a bonus." The implication of these statements is that where petitioner's commission increased between the sale and shipment, he was paid the increased amount, i.e. the rate structure in place upon shipment as contended by respondent. Again, however, we find no evidence in support of these statements in the record which may either clarify these statements or confirm them.

policy was as to commission calculation. Clearly, the parties disagree as to how commissions were calculated; the circuit court improperly focused on when the commissions were paid and therefore improperly determined there was no genuine issue of fact.

> "'A motion by both plaintiff and defendant for summary judgment under Rule 56, R.C.P. does not constitute a determination that there is no issue of fact to be tried and if a genuine issue of material fact is involved both motions should be denied.' Syl. pt. 3, *Haga v. King Coal Chevrolet Company*, 151 W.Va. 125, 150 S.E.2d 599 (1966)." Syl. Pt. 4, *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88 (1985).

Syl. Pt. 9, *Mountain Lodge Assoc. v. Crum & Forster Indemnity Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001). As we observed in *Marcus v. Staubs,* 230 W.Va. 127, 141, 736 S.E.2d 360, 374 (2012), "the mere fact that the parties seemingly agreed that there were no disputed issues of material fact does not constrain the trial court to accept that representation as true and enter summary judgment for one of the parties." *See Robertson v. Opequon Motors, Inc.*, 205 W. Va. 560, 519 S.E.2d 843 (1999) (finding no error in WPCA case where court refused to set aside verdict due to conflicting evidence presented about how commissions were calculated); *Saunders v. Tri-State Block Corp.*, 207 W. Va. 616, 620, 535 S.E.2d 215, 219 (2000) (finding summary judgment improper in WPCA case where "further inquiry concerning the facts [was] desirable to clarify application of the law").

13

## IV.  CONCLUSION

For the reasons set forth above, this Court reverses the August 30, 2013, order of the Circuit Court of Kanawha County granting summary judgment in favor of respondent and remands this case for further proceedings consistent with this opinion.

Reversed and remanded.

14