IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

**FILED**
**April 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0311

ASAD DAVARI,
Plaintiff Below, Petitioner

v.

THE WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS,
Defendant Below, Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Tera L. Salango, Judge
Civil Action Nos. 14-C-263 and 14-C-838

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Submitted:  March 16, 2021
Filed:  April 16, 2021

Robert H. Miller, II, Esq.
The Sutter Law Firm PLLC
Charleston, West Virginia
Counsel for Petitioner

Joseph U. Leonoro, Esq.
Mark C. Dean, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Monté L. Williams, Esq.
Steptoe & Johnson PLLC
Morgantown, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."

Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.      "A motion for summary judgment should be granted only when it is

clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not

desirable to clarify the application of the law."  Syllabus Point 3, *Aetna Casualty & Surety*

*Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

3.      "The circuit court's function at the summary judgment stage is not to

weigh the evidence and determine the truth of the matter, but is to determine whether there

is a genuine issue for trial."  Syllabus Point 3, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d

755 (1994).

4.      "The Board of Governors of West Virginia University is a State

agency, and, as such, is an arm of the State and, under Article VI, Section 35 of the

Constitution of West Virginia, is immune from suit to enforce payment of a claim against

such board."  Syllabus Point 1, *City of Morgantown v. Ducker*, 153 W. Va. 121, 168 S.E.2d

298 (1969).

5.      "Suits which seek no recovery from state funds, but rather allege that

recovery is sought under and up to the limits of the State's liability insurance coverage, fall

i

outside the traditional constitutional bar to suits against the State." Syllabus Point 2, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

6. "'Language in an insurance policy should be given its plain, ordinary meaning.' Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)." Syllabus Point 5, *Bland v. State*, 230 W. Va. 263, 737 S.E.2d 291 (2012).

7. "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syl., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970)." Syllabus Point 6, *Bland v. State*, 230 W. Va. 263, 737 S.E.2d 291 (2012).

8. "The determination as to whether 'wages,' as defined in West Virginia Code § 21-5-1(c) (2013 Repl.Vol.), are payable pursuant to the requirements of West Virginia Code § 21-5-1 *et seq.* (2013 Repl.Vol.) is governed by the terms of the employment agreement, whether written or in the form of a consistently applied unwritten policy." Syllabus Point 5, *Adkins v. Am. Mine Rsch., Inc.*, 234 W. Va. 328, 765 S.E.2d 217 (2014).

ii

9.      "Article VI, § 35, of the Constitution of West Virginia, concerning this State's sovereign immunity, does not bar the claim of a State employee for unpaid wages asserted under the West Virginia Wage Payment and Collection Act, *W. Va. Code*, 21-5-1 (1987), *et seq.*, whether the claim is initiated through the administrative remedies provided under the Wage Payment and Collection Act or initiated by filing a complaint for the unpaid wages directly in circuit court."  Syllabus Point 5, *Beichler v. W. Va. Univ. at Parkersburg*, 226 W. Va. 321, 700 S.E.2d 532 (2010).

10.     "Generally, the existence of a contract is a question of fact for the jury."  Syllabus Point 4, *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453 (1986).

iii

WALKER, Justice:

Petitioner Asad Davari, Ph.D., a professor of electrical engineering at West Virginia University Institute of Technology (WVUIT), alleges that WVUIT breached its agreement to pay him a supplementary salary for serving as director of a research center. He filed a common law claim for breach of contract, alternative equitable claims of quantum meruit and unjust enrichment, and a statutory cause of action under the West Virginia Wage Payment Collection Act (WPCA)[1] against Respondent The West Virginia University Board of Governors (WVU BOG), which manages the educational operations of WVUIT.[2] Because WVU BOG is a State agency, it invoked the doctrine of sovereign immunity and moved for summary judgment. The Circuit Court of Kanawha County, West Virginia, granted summary judgment in favor of WVU BOG on all of Dr. Davari's claims. He now appeals.

While sovereign immunity is facially absolute,[3] two narrow exceptions are implicated here. First, sovereign immunity does not bar a plaintiff from seeking to recover under the State's liability insurance coverage—as Dr. Davari attempted to do through his contractual and quasi-contractual claims—but the policy must still cover those claims for

---

[1] *See* W. Va. Code §§ 21-5-1 through 18 (2019).

[2] W. Va. Code §§ 18B-2A-1(b) and 4(a) (2016).

[3] *See* W. Va. Const. art. VI, § 35 ("The State of West Virginia shall never be made defendant in any court of law or equity[.]").

1

him to succeed.[4] We agree with the circuit court that WVU BOG's policy does not cover Dr. Davari's breach of contract claim or equitable claims of quantum meruit and unjust enrichment. So, we affirm that portion of the summary judgment order. Second, sovereign immunity does not bar the claim of a State employee, like Dr. Davari, who seeks unpaid wages under the WPCA.[5] And contrary to the circuit court's order, we find that genuine issues of disputed fact exist as to whether WVU BOG violated the WPCA. So, we reverse that portion of the summary judgment order and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Dr. Davari is a professor at WVUIT's College of Engineering.[6] In January 2004, he was appointed Director of the Center for Research on Advanced Control of Autonomous Systems and Manufacturing (the Center) by Muthukrishnan Sathyamoorthy, Ph.D., Dean of the College. The Center's business plan states that it "will be a research unit within the College of Engineering and it will be mostly self-supporting with its own annual budget derived from contracts, private funds, foundation funds, external grants, research grants and contracts from federal and state agencies research grants and contracts

---

[4] *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

[5] *Beichler v. W. Va. Univ. at Parkersburg*, 226 W. Va. 321, 700 S.E.2d 532 (2010).

[6] Dr. Davari joined the faculty of West Virginia Institute of Technology in 1985. West Virginia University (WVU) assumed stewardship of the school in 1996, and it became a fully integrated division of WVU in 2007.

from industries[.]"  In the January 5, 2004 appointment letter to Dr. Duvari, Dr. Sathyamoorthy stated, in part:

> It gives me great pleasure to appoint you as the Founding Director of the [Center].  For your information, I have attached a copy of the Center proposal and the associated business plan approved by the WVU Tech's Cabinet on December 2, 2003.
>
> As the Director, you will be paid a supplemental salary based on research effort fully derived from external sources by the Center.  The supplemental salary will be in addition to the summer salary and others received from external funding sources.  The supplemental salary will be paid over the nine month academic year period.

The Center's proposal and business plan referenced in the appointment letter has an "Administration and Oversight" section with a chart titled "Annual Budget for the Center."  This chart has a line item listing a $24,000 salary for the Center's Director.  There are handwritten notations on each page of the Center's proposal and business plan stating it was "OK" and "approved 12/2/03[.]"  This date is significant because WVUIT's Cabinet met on December 2, 2003.  The meeting minutes reflect that Dr. Sathyamoorthy gave a brief report on the Center, distributed handouts related to the Center, and the Cabinet discussed how the Center's grants were to be processed.[7]

---

[7] WVUIT's Cabinet had previously discussed the Center at its November 2003 meeting.  While it voted to approve the creation of the Center, it explicitly did not approve the "Administration and Oversight" section that contained the proposed salaries at this earlier meeting.

Dr. Davari accepted the appointment as Director of the Center and served in that capacity for more than a decade. He performed this work at the Center while conducting his regular teaching and other duties as a professor at WVUIT's College of Engineering. Under his leadership, the Center generated nearly $5.5 million for WVUIT in external grant funding. But Dr. Davari contends that he was never paid the supplemental salary for this work.

Between 2006 and 2012, Dr. Davari received annual notices appointing him to the faculty at WVUIT and listing his total base salary as professor; he endorsed these notices. While the parties agree that Dr. Davari's base salary was paid, in part, by external grants, his annual faculty appointment notices do not mention any supplemental salary.

Dr. Davari first inquired about the payment of his supplemental salary for serving as Director of the Center to Drs. Sathyamoorthy and Janeksela by e-mail on November 2, 2004. On May 19, 2006, Dr. Davari e-mailed Dr. Sathyamoorthy again asking about the supplemental salary. Dr. Sathyamoorthy replied, by e-mail on May 31, 2006, and confirmed that the additional salary should come from external research grants and contracts. He also stated that "[a]s a result of numerous unfortunate delays and mismanagement, the Center has not had the resources needed to pursue its activities as planned." On June 5, 2006, Dr. Davari wrote to Dr. Sathyamoorthy again to confirm that he would be entitled to a supplemental salary for this work.

4

Dr. Davari raised the issue of his supplemental salary more earnestly in 2012 to Carolyn Long, Campus President of WVUIT, after he was not selected to serve as Dean following Dr. Sathyamoorthy's departure. In an e-mail to Ms. Long on October 29, 2012, Dr. Davari stated that "I have not received any of the approved supplemental salary so far. Now that you are addressing the distribution of overhead funding, I am requesting that you address the too long overdue supplemental salary as well." In 2013, Dr. Davari sent several additional e-mails to Dr. Long requesting his supplemental salary.

After investigating the matter for more than a year, Ms. Long advised Dr. Davari by letter dated December 17, 2013, that he would not be paid any additional salary for serving as Director of the Center. First, she explained that Dr. Davari had already been compensated as he was one of the highest paid professors at WVUIT. Second, Ms. Long stated that there was no enforceable contract that entitled him to receive a $24,000 salary for this work. And third, she said she believed that Dr. Davari waived his right to object to his salary because he had signed and approved annual notices of appointment throughout the years that listed his total salary.

After receiving Ms. Long's letter, Dr. Davari e-mailed Dr. Sathyamoorthy, who was no longer employed at WVUIT, and asked him to confirm the arrangement of his supplemental salary for his work as Director of the Center. In his reply e-mail, Dr. Sathyamoorthy confirmed that Dr. Davari was to be paid a supplemental salary of $24,000 from grant funds generated by the Center.

5

In February 2014, Dr. Davari filed a complaint against WVU BOG alleging claims of breach of contract, quantum meruit, and unjust enrichment. Dr. Davari filed an amended complaint in October 2014, adding a WPCA claim. He alleged that the WVU BOG wrongfully failed to pay him a $24,000 supplementary salary every year from 2004 through the present.[8]

In September 2019, WVU BOG filed a motion for summary judgment contending that Dr. Davari's claims for breach of contract, unjust enrichment, and quantum meruit were barred by the doctrine of sovereign immunity. WVU BOG also argued that even if Dr. Davari could state claims of unjust enrichment and quantum meruit despite the State's sovereign immunity, the doctrine of laches would bar those claims as a matter of law. It further asserted that Dr. Davari had no claim under the WPCA because he could not show that any terms of his employment agreement entitled him to $24,000 in annual supplemental compensation over and above his regular salary.

Dr. Davari countered that sovereign immunity does not bar his claims because 1) the applicable insurance policy is ambiguous and the matter should proceed to

---

[8] Dr. Davari filed a second complaint against WVU BOG alleging that WVUIT did not appoint him Dean because of his national origin and in retaliation for a complaint he filed against the former West Virginia Institute of Technology, in violation of the West Virginia Human Rights Act. *See* W. Va. Code §§ 5-11-1 to -20 (2016) (WVHRA). In April 2015, the circuit court consolidated that case, Civil Action No. 14-C-838, with this case. But, Dr. Davari voluntarily withdrew his WVHRA claim and that matter was dismissed. So, this appeal involves only the claims Dr. Davari asserted in Civil Action No. 14-C-263.

trial if the State's liability insurance policy potentially provides coverage, and 2) sovereign immunity is not implicated in the context of a WPCA claim where a State employee seeks to recover unpaid wages. And Dr. Davari argued that the doctrine of laches was not applicable because he asserted his rights by making numerous inquiries about the supplemental salary. Finally, Dr. Davari stated that WVU BOG was not entitled to summary judgment because genuine issues of material fact exist that only a jury can decide.

The circuit court held a hearing on WVU BOG's motion for summary judgment in October 2019 and addressed the motion again at a pre-trial conference in February 2020. In its March 2, 2020 order, the circuit court granted summary judgment in favor of WVU BOG and dismissed the complaint. The circuit court found that WVU BOG was entitled to sovereign immunity as to Dr. Davari's claims for breach of contract, quantum meruit, and unjust enrichment; it held that those claims were excluded from insurance coverage under the State's policy which provides that "[t]his insurance does not apply to: . . . any claim(s) made against the **"insured"** for damages attributable to wages, salaries and benefits." The court noted that the policy also excluded coverage for "any claim(s) based upon or attributable to any allegations or claims that the **"insured"** breached the terms of any type or any form of contract, either express or implied, written or oral." The court observed that even if sovereign immunity did not bar Dr. Davari's equitable claims of quantum meruit and unjust enrichment, those claims would be barred by the doctrine of laches. It reasoned that Dr. Davari offered no explanation for why he did not

inquire about this alleged supplemental salary between 2006 and 2012, so it granted summary judgment on that alternative ground.

With regard to Dr. Davari's WPCA claim, the circuit court found that WVU BOG was entitled to summary judgment "because no genuine issue of material fact exists regarding whether [Dr. Davari] has a valid, enforceable contract with WVU BOG guaranteeing him a supplemental salary of $24,000 per year, [and] there is likewise no genuine issue of material fact regarding whether WVU BOG violated the WPCA by not paying [Dr. Davari] the $24,000 per year he seeks."

Dr. Davari appeals the circuit court's order granting summary judgment to WVU BOG and dismissing his complaint with prejudice.

## II. STANDARD OF REVIEW

As we held in syllabus point one of *Painter v. Peavy*,[9] "[a] circuit court's entry of summary judgment is reviewed de novo."

Under Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is "designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial, if in essence there is no real dispute as to salient facts or if

---

[9] 192 W. Va. 189, 451 S.E.2d 755 (1994).

8

only a question of law is involved."[10]  We are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."[11]  This Court and the court below "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion [for summary judgment]."[12] With these guiding principles, we consider the parties' arguments.

## III.  ANALYSIS

Dr. Davari raises eight assignments of error in his challenge to the circuit court's summary judgment ruling in favor of WVU BOG.  In three of his assignments of error, Dr. Davari argues that a jury could find that an employment agreement required him to be paid a supplemental salary of $24,000 for serving as Director of the Center, he did not receive this compensation, and he did not waive this right.  In two other assignments of error Dr. Davari contends that the circuit court erred by granting the motion for summary judgment on a theory of sovereign immunity because he is entitled to bring an action for relief under the WPCA, and inconsistent provisions in the State's insurance policy create the potential for coverage.  Dr. Davari also complains in two assignments of error that if

---

[10] *Hanks v. Beckley Newspapers Corp.*, 153 W. Va. 834, 836-37, 172 S.E.2d 816-17 (1970).

[11] Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

[12] *Painter*, 192 at 192, 451 S.E.2d at 758.

sovereign immunity does not apply, the doctrine of laches does not bar his alternative claims based on quantum meruit and unjust enrichment, and even if it could, that is a factual question for a jury. And in his final assignment of error, Dr. Davari contends that the circuit court made several erroneous findings of fact and conclusions of law, and improperly resolved disputed facts. We consolidate his assignments of error into three categories for purposes of our discussion.

## A. *Sovereign Immunity Bars the Breach of Contract Claim and Equitable Claims*

Several principles of law guide our resolution of sovereign immunity, the first issue in this appeal. "[T]he policy which underlies sovereign immunity is to prevent the diversion of State monies from legislatively appropriated purposes."[13] So, where monetary relief is sought against the State treasury for which a proper legislative appropriation has not been made, sovereign immunity raises a bar to suit.[14] In syllabus point one of *City of Morgantown v. Ducker*,[15] this Court recognized that: "The Board of Governors of West Virginia University is a State agency, and, as such, is an arm of the State and, under Article VI, Section 35 of the Constitution of West Virginia, is immune from suit to enforce payment of a claim against such board."

---

[13] *Mellon-Stuart Co. v. Hall*, 178 W. Va. 291, 296, 359 S.E.2d 124, 129 (1987) (citations and footnote omitted).

[14] *Id*.

[15] 153 W. Va. 121, 168 S.E.2d 298 (1969).

10

While the State and its agencies are entitled to the benefit of sovereign immunity, this Court carved a narrow exception in *Pittsburgh Elevator Co. v. West Virginia Board of Regents*,[16] where a plaintiff merely seeks to recover under the State's liability insurance coverage. In syllabus point two of *Pittsburgh Elevator*, we held that "[s]uits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State."[17]

Dr. Davari argues that the circuit court erred in granting summary judgment to WVU BOG on the basis of sovereign immunity because he is seeking a recovery only from the State's insurance policy. He maintains that the insurance policy is ambiguous and may provide coverage for his breach of contract and equitable claims of quantum meruit and unjust enrichment. WVU BOG disagrees and states that Dr. Davari's claims are specifically excluded under the plain terms of the insurance policy.

This Court has held that "[l]anguage in an insurance policy should be given its plain, ordinary meaning."[18] And "[w]here the provisions of an insurance policy contract

---

[16] 172 W. Va. 743, 310 S.E.2d 675 (1983).

[17] *Id.*

[18] Syl. Pt. 5, *Bland v. State*, 230 W. Va. 263, 737 S.E.2d 291 (2012) (quoting Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), (continued . . .)

11

are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."[19]

Dr. Davari's claim for breach of contract and his equitable claims of quantum meruit and unjust enrichment are all based on WVU BOG's alleged failure to pay him a supplemental salary for serving as Director of the Center. But claims to recover wages owed under an employment contract are explicitly excluded by two separate provisions in the State's insurance policy. The policy provides that:

> This insurance does not apply to:
> . . . .
>
> H. To any claim(s) made against the **"insured"** for damages attributable to wages, salaries and benefits.
>
> I. To any claim(s) based upon or attributable to any allegations or claims that the **"insured"** breached the terms of any type or any form of contract, either express or implied, written or oral.

Because Dr. Davari's breach of contract and related equitable claims are explicitly excluded by the insurance policy, he does not meet *Pittsburgh Elevator*'s narrow exception.

---

*overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987)).

[19] *Id.* at Syl. Pt. 6 (quoting Syl. Pt., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970)).

We reject Dr. Davari's argument that his claim for supplemental wages under his employment contract could potentially be covered by the Comprehensive General Liability Coverage (CGL) section of the State's liability insurance coverage dealing with "Incidental Contracts." We examined this policy provision in *Arnold Agency v. West Virginia Lottery Commission*,[20] and found "the CGL section extends only to claims of bodily injury and property damage."[21] And like the plaintiff in *Arnold Agency*, Dr. Davari has never alleged such damages. So, under the clear language of the CGL section of the State's liability insurance policy, there is no coverage for Dr. Davari's breach of contract claim or alternative equitable theories of quantum meruit or unjust enrichment, and he does not meet *Pittsburgh Elevator*'s exception to sovereign immunity.

For these reasons, WVU BOG is entitled to the benefit of sovereign immunity on Dr. Davari's claim for breach of contract, and his equitable claims of quantum meruit and unjust enrichment. The circuit court did not err in granting WVU BOG's motion for summary judgment on these claims.[22]

---

[20] 206 W. Va. 583, 526 S.E.2d 814 (1999).

[21] *Id*. at 594, 526 S.E.2d at 826.

[22] Because of the way that we resolve this issue, it is unnecessary to address Dr. Davari's argument that the court misapplied the doctrine of laches to bar his alternative theories of unjust enrichment and quantum meruit.

13

### B.     *Sovereign Immunity Does Not Bar the WPCA Claim*

We next address Dr. Davari's claim under the WPCA.  West Virginia Code § 21-5-3(a) provides that:

> Every person, firm or corporation doing business in this state, except railroad companies as provided in section one of this article, shall settle with its employees at least twice every month and with no more than 19 days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

This Court has held that "[t]he West Virginia Wage Payment and Collection Act is remedial legislation designed to protect [all] working people and assist them in the collection of compensation wrongly withheld."[23]  When determining an employee's right to wages, courts examine the terms of the applicable employment contract:

> The determination as to whether "wages," as defined in West Virginia Code § 21-5-1(c) (2013 Repl.Vol.), are payable pursuant to the requirements of West Virginia Code § 21-5-1 *et seq.* (2013 Repl.Vol.) is governed by the terms of the employment agreement, whether written or in the form of a consistently applied unwritten policy.[24]

---

[23] *Mullins v. Venable*, 171 W. Va. 92, 94, 297 S.E.2d 866, 869 (1982) (citation omitted).

[24] Syl. Pt. 5, *Adkins v. Am. Mine Rsch., Inc.*, 234 W. Va. 328, 765 S.E.2d 217 (2014).

14

Under circumstances almost identical in relevant respects to Dr. Davari's claim, this Court held in *Beichler v. West Virginia University at Parkersburg*,[25] that the State's sovereign immunity does not bar the claim of a State employee for unpaid wages under the WPCA. In *Beichler*, the plaintiff taught physics for WVU; he entered into a discretionary contract, which entitled him to extra compensation for work he performed beyond his regular teaching duties. Dr. Beichler filed suit asserting claims under the WPCA, but the circuit court dismissed his complaint, in part, based on sovereign immunity. On appeal, this Court reversed and stated that "'the sovereign immunity doctrine is not implicated in the context of employee relations where the State, acting through its agents, as an employer, has unlawfully withheld all or a part of an employee's salary[.]'"[26] We held in syllabus point five of *Beichler* that:

> Article VI, § 35, of the Constitution of West Virginia, concerning this State's sovereign immunity, does not bar the claim of a State employee for unpaid wages asserted under the West Virginia Wage Payment and Collection Act, *W. Va. Code*, 21-5-1 (1987), *et seq.,* whether the claim is initiated through the administrative remedies provided under the Wage Payment and Collection Act or initiated by filing a complaint for the unpaid wages directly in circuit court.[27]

---

[25] 226 W. Va. 321, 700 S.E.2d 532 (2010).

[26] *Beichler*, 226 W. Va. at 325, 700 S.E.2d at 536 (quoting *Gribben v. Kirk*, 195 W. Va. 488, 495, 466 S.E.2d 147, 154 (1995)).

[27] *Id*. at 322, 700 S.E.2d at 533, syl. pt. 5.

Dr. Davari argues that like the plaintiff in *Beichler*, he entered into a contract to perform work over and above his regular duties as a professor (as reflected in his appointment letter with attachment). Because Dr. Davari contends that he was not paid for those services, he claims that he is entitled to seek damages under the WPCA.[28] WVU BOG responds that Dr. Davari cannot use the WPCA to create a "back door" into a clearly barred contractual claim. It contends that Dr. Davari's WPCA claim "rises and falls" with his breach of contract claim so closely that Dr. Davari cannot evade sovereign immunity by "bootstrapping" his substantive claims to the WPCA. WVU BOG relies on *Grim v. Eastern Electric, LLC*,[29] where this Court observed, "the WPCA does not create a right to compensation; rather it merely provides a statutory vehicle for employees to recover agreed-upon, earned wages from an employer."[30] From there, WVU BOG attempts to describe Dr. Davari's WPCA claim as a "derivative claim." But this characterization is inaccurate. Derivative claims derive by operation of law from the main claim. For example, where one spouse is injured the other spouse may have a claim for loss of

---

[28] *See* W. Va. Code § 21-5-6, in part ("If any person, firm or corporation shall refuse for the period of five days to settle with and pay any of its employees at the intervals of time as provided in section three [§ 21-5-3] of this article, . . . and suit be brought for the amount overdue and unpaid, judgment for the amount of such claim proven to be due and unpaid, with legal interest thereon until paid, shall be rendered in favor of the plaintiff in such action[.]").

[29] 234 W. Va. 557, 767 S.E.2d 267 (2014).

[30] *Id*., at 572, 767 S.E.2d at 282.

16

consortium flowing from that injury. The loss of consortium claim is a derivative claim[31] that cannot be maintained independent of the underlying personal injury claim.[32] In contrast, Dr. Davari's WPCA claim is his independent statutory cause of action wholly distinct from his common law breach of contract claim.

This Court rejects the suggestion that an employee is foreclosed from relying on the WPCA simply because an employer disputes the terms or existence of an employment contract giving rise to the claim for wages due. That position is untenable considering the policy and purpose of the WPCA. Indeed, employers commonly raise this type of defense in a WPCA action.[33] For instance, in *Britner v. Medical Security Card, Inc.*,[34] three employees were hired by the employer in 1990 under a contract that entitled them to an annual fifteen percent raise. But the employer never paid the employees their

---

[31] *See State ex rel. Small v. Clawges*, 231 W. Va. 301, 310, 745 S.E.2d 192, 201 (2013) ("It is generally recognized that in a procedural context, the derivative claim for loss of consortium is a mere incident to a cause of action and not the subject of an action itself.") (citations omitted).

[32] *Southern Env't, Inc. v. Bell*, __ W. Va. __, 854 S.E.2d 285, 293 (2020).

[33] *See e.g., Adkins v. Am. Mine Rsch., Inc.*, 234 W. Va. 328, 765 S.E.2d 217 (2014) (plaintiff brought WPCA suit seeking unpaid commissions, and former employer denied that he was owed any additional commission upon his resignation; recognizing the parties disagreed as to how commissions were calculated, this Court held that the circuit court improperly determined there was no genuine issue of fact when it granted summary judgment for employer).

[34] 200 W. Va. 352, 489 S.E.2d 734 (1997).

raises.[35]  In 1995, they voluntarily ended their employment and sued the employer to recover their unpaid annual raises.  The employer argued that it did not owe them the wages because the employment contracts had been modified by the employees' agreement to defer the raises until the busines was profitable.  So, the employer also argued that the employees' WPCA suit was barred by the doctrine of estoppel.[36]  The circuit court rejected these argument and granted summary judgment to the employees.  On appeal, this Court affirmed the ruling based upon the clear language of West Virginia Code § 21-5-10.[37]  After concluding that the unpaid raises were "wages," we reasoned that

> estoppel is not a defense which can be successfully asserted to bar an action pursuant to W. Va. Code § 21-5-10 (1996).
>
> . . . .
>
> The legislature has attempted to prevent employers from abusing their positions by compromising the wages of employees.  The language in W. Va. Code § 21-5-10 is mandatory.  An employer must pay earned wages to its employees.  Any other reading would seriously compromise and undermine the legislative intent of W. Va. Code § 21-5-10.  Therefore, we affirm the circuit court's summary judgment ruling.[38]

---

[35] *Id*. at 353, 489 S.E.2d at 735.

[36] *Id*. at 354, 489 S.E.2d at 736.

[37] *See* W. Va. Code § 21-5-10 ("Except as provided in section thirteen, no provision of this article may in any way be contravened or set aside by private agreement, and the acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim and any release required as a condition of such payment shall be null and void.").

[38] *Britner*, 200 W. Va. at 354-55, 489 S.E.2d at 736-37.

18

By finding that the doctrine of estoppel could not be utilized to bar the plaintiffs' action under the WPCA, this Court necessarily found that a WPCA claim can be brought even if the employer disputed the terms of the applicable employment contract.

In *Citynet, LLC v. Toney*,[39] the employer denied that its "Employee Incentive Plan" constituted a contract that entitled the employees to payment of their vested balance in the plan when leaving the company, sufficient to support a WPCA claim. Mr. Toney quit his employment and requested to redeem his vested balance in the plan of about $87,000. Citynet refused and Mr. Toney brought a WPCA claim, among other claims.[40] The circuit court granted partial summary judgment to Mr. Toney and concluded that Citynet's failure to timely pay Mr. Toney his vested balance violated the WPCA.[41] This Court affirmed, reasoning that the plan was a unilateral contract entitling the employee to redeem his balance in the plan.[42] We stated that "Citynet employees who remain employed with the company long enough to participate in the Plan and become vested in the benefits

---

[39] 235 W. Va. 79, 772 S.E.2d 36 (2015).

[40] *Id*. at 84, 772 S.E.2d at 40.

[41] *Id*.

[42] *Id*.

19

offered, when they are under no obligation to do so, have provided sufficient consideration for the formation of a unilateral contract."[43]

For all of these reasons, we find that sovereign immunity does not bar Dr. Davari's WPCA claim. Next, we take up whether a reasonable fact-finder viewing the summary judgment record in the light most favorable to Dr. Davari could find that WVU BOG violated the provisions of the WPCA.

## C. Disputed Issues of Fact Exist Concerning WPCA Claim

Finally, we address whether Dr. Davari has presented sufficient evidence to show that questions of material fact exist on his WPCA claim, namely: 1) whether an employment agreement was created when he accepted the appointment of Director of the Center that entitled him to receive a supplementary salary of $24,000 beginning in 2004, and 2) whether he is owed these wages. To begin, we note that "[g]enerally, the existence of a contract is a question of fact for the jury."[44]

Dr. Davari argues that WVU BOG is not entitled to summary judgment because disputed evidence exists that could lead a jury to find in his favor on the creation of a contract. He relies on the January 5, 2004, appointment letter from Dr. Sathyamoorthy

---

[43] *Id*. at 86, 772 S.E.2d at 43.

[44] Syl. Pt. 4, *Cook v. Heck's Inc.*, 176 W. Va. 368, 342 S.E.2d 453 (1986).

that referenced the Center's proposal and business plan that was "approved by the WVU Tech's Cabinet on December 2, 2003." This attachment has a chart listing the salary for the Center's Director at $24,000. WVU BOG responds that summary judgment was appropriate because there was never a meeting of the minds as to any specific compensation for the Director's position. WVU BOG contends that WVUIT's Cabinet specifically rejected the Center's salary proposals at its November 2003 Cabinet meeting and that the December 2003 meeting minutes do not reflect that those salaries were approved. But, Dr. Davari replies that Dr. Sathyamoorthy confirmed the agreement that he was to be paid $24,000 a year for serving as the Center's Director in his 2013 e-mail. As this debate demonstrates, factual issues clearly exist which preclude summary judgment.

Dr. Davari also contends that he presented evidence that he was never paid this supplemental salary and that he made several inquiries and complaints about this over the years. WVU BOG responds that Dr. Davari was one of the highest paid faculty members at WVUIT and part of his salary was paid from external grant funds. WVU BOG also states that Dr. Davari continued to endorse his annual notices appointing him to faculty at WVUIT between 2006 and 2012, and those notices stated his total salary. WVU BOG argues that even if Dr. Davari was entitled to receive a supplemental salary for his work as Director of the Center, he waived that right by endorsing his annual notices of appointment. But that is not a valid defense to a WPCA claim. West Virginia Code § 21-5-10 provides, in part, that "acceptance by an employee of a partial payment of wages shall not constitute a release as to the balance of his claim[.]" In any event, Dr. Davari replies that these notices

21

provide his total base salary as professor and they do not mention the supplemental salary owed for serving as Director of the Center. Again, we conclude that factual issues exist here.

In light of the standard for evaluating motions for summary judgment, where a weighing of the evidence is not permitted, we conclude that Dr. Davari has pointed to sufficient evidence that would allow a reasonable fact-finder to find in his favor that an employment agreement existed under which he was entitled receive a supplementary salary of $24,000 to serve as Director of the Center.

## IV. CONCLUSION

WVU BOG is entitled to summary judgment on Dr. Davari's claims for breach of contract, quantum meruit, and unjust enrichment because those claims are barred by the doctrine of sovereign immunity. We affirm that portion of the circuit court's March 2, 2020 summary judgment order. But the circuit court erred in granting summary judgment on Dr. Davari's WPCA claim. So, that portion of the March 2, 2020 summary judgment order is reversed, and the case is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.